544 So.2d 1331 (1989)
FIRST FEDERAL SAVINGS & LOAN ASSOC. OF WARNER ROBINS, Georgia
v.
DELTA TOWERS, LTD., a Limited Partnership.
No. 88-CA-2056.
Court of Appeal of Louisiana, Fourth Circuit.
May 26, 1989.
*1333 B. Franklin Martin, III, Leopold Z. Sher, Maureen O'Connor Sullivan, McGlinchey, Stafford, Mintz, Cellini & Lang, P.C., New Orleans, for Darryl D. Berger, David R. Burrus, and Judith Fos Burrus.
Henry A. King, Eric H. Weimers, Nesser, King & LeBlanc, New Orleans, for David R. Vaughan.
Peter A. Feringa, Jr., Kenneth J. Servay, Douglas L. Grundmeyer, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, and Russ M. Herman, Steven J. Lane, John B. Loweb, Herman, Herman, Katz & Cotlar, New Orleans, for First Federal Sav. & Loan Ass'n of Warner Robins, Ga.; Joseph V. Bologna, New Orleans, of counsel.
Philip K. Jones, Jr., Liskow & Lewis, New Orleans, for Delta Towers, Ltd.
Before CIACCIO, WARD and BECKER, JJ.
*1334 WARD, Judge.
The questions presented in this appeal involve two separate disputes which arose in the same proceeding. The first question is whether the District Court erred when it enjoined First Federal Savings and Loan Association of Warner Robins, Georgia from foreclosing by executory process on hotel property owned by Delta Towers, Ltd. in New Orleans, Louisiana. The second question is whether the District Court erred when it ranked competing mortgage claims to the proceeds of a judicial sale of the property.
After First Federal instituted foreclosure, Darryl Berger, David Burrus and his wife Judith Fos Burrus, as well as Borg-Warner Acceptance Corporation and its successor in interest, David Vaughan (Borg-Warner), intervened seeking to prove that their mortgages on the same hotel property were superior to First Federal's mortgage. After a hearing to determine the ranking of the various mortgage claims, a Commissioner of the District Court found that First Federal held the superior mortgage on the property. The District Court rejected the intervenors' opposition to the Commissioner's report and accepted the Commissioner's findings and recommendation. Darryl Berger, David and Judith Burrus and Borg-Warner appeal the judgment in the ranking dispute.
Several months after the ranking hearing, Delta Towers filed a petition for injunction. The Commissioner recommended the issuance of a permanent injunction against First Federal, and the District Court issued the injunction, enjoining First Federal from taking any further steps in the executory proceeding against Delta Towers.
We reverse and set aside the injunction restraining the seizure and sale, and we affirm the District Court's ruling in the ranking hearing.
The factual and procedural background is pertinent to both the injunction and ranking disputes. Capital Properties, Inc., whose sole stockholders were Darryl Berger and David Burrus, acquired the property in 1972. Subsequently, Capital Properties, Inc. granted a first mortgage to Banco Mortgage Company. After a series of conveyances to various legal entities owned by Berger and Burrus, on November 25, 1981, by Act of Sale, Darryl Berger and David Burrus took title to the property in their names. At this time, Darryl Berger and his wife had established a separate property regime by marriage contract, and the property acquired was the separate property of Darryl Berger. David and Judith Burrus, however, acquired the property as community property.
Also, on November 25, 1981, by Act of Credit Sale, Darryl Berger and David Burrus sold the property to Delta Towers, Ltd., a Georgia limited partnership. Darryl Berger and David Burrus executed the Act of Credit Sale and Judith Burrus intervened to acknowledge, consent to and confirm the sale of the property. Because the property was the separate property of Darryl Berger, his wife did not participate in the transaction. The property was sold subject to the existing mortgage in favor of Banco Mortgage Company.
Delta Towers paid Berger and Burrus $225,000 cash and gave three promissory notes for the balance of the purchase price. One note, in the amount of $6,512,675, was designated "non-negotiable" and named Darryl Berger and David Burrus as payees. Two notes, in amounts of $13,500,000 and $1,500,000, were made payable to the order of Darryl Berger and David Burrus. Judith Burrus was not a payee on any of the three notes. These three notes were secured by a vendor's lien and mortgage on the hotel property. By a special condition of the promissory notes and the vendor's lien and mortgage, payment could only be enforced by foreclosure on the property, and, in the event of judicial sale of the property, the payees, Berger and Burrus, agreed they would not seek a deficiency judgment against the makers of the notes. During the negotiations for the sale of the property, Berger and Burrus, through one of their solely owned legal entities, acquired a limited partnership interest in Delta Towers. After the sale of the hotel *1335 property, Berger and Burrus retained their limited partnership interest.
Delta Towers obtained a loan commitment of $27,500,000 from First Federal to pay the Banco mortgage and to make improvements on the property. On August 7, 1982, Delta Towers granted a $27,500,000 collateral mortgage in favor of First Federal, pledging the collateral mortgage note to secure a handnote given for the amount of the loan. On the same day, Berger and Burrus and Delta Towers executed an Act of Modification of the November 1981 vendor's lien and mortgage and the three promissory notes it secured. Judith Burrus intervened in the Act of Modification to take cognizance of and consent to the Act. Also on August 7, 1982, Berger and Burrus executed an Act of Subordination by which they subordinated their vendor's lien and mortgage to First Federal's collateral mortgage, and the First Federal mortgage became the first mortgage after payment and cancellation of the Banco mortgage. Judith Burrus did not intervene in the Act of Subordination.
On December 31, 1982, Delta Towers granted a second collateral mortgage of $2,500,000 on the hotel property in favor of First Federal, pledging the second collateral mortgage note to secure a second handnote given for an additional loan of $2,500,000. On February 9, 1983 Berger and Burrus executed another Act of Subordination by which they subordinated the November 1981 vendor's lien and mortgage to the second collateral mortgage. Judith Burrus did not intervene in this subordination.
Then, on April 22, 1983, Delta Towers granted a collateral mortgage on the same property in favor of Borg-Warner, pledging a collateral mortgage note to secure a handnote of $2,720,000.
Subsequently, First Federal agreed to refinance the earlier loans of $27,500,000 and $2,500,000 and to lend Delta Towers an additional $7,000,000. On September 1, 1983, Delta Towers executed a new collateral mortgage in the amount of $50,000,000, pledging a new collateral mortgage note to secure a handnote given for the total indebtedness to First Federal of $37,000,000.
Also on September 1, 1983 Berger and Burrus executed a third Act of Subordination by which they subordinated the November 1981 vendor's lien and mortgage and the three promissory notes it secured to the new First Federal note and mortgage. Borg-Warner also subordinated its collateral mortgage in favor of the new First Federal collateral mortgage.
As part of the same transaction, First Federal and Berger and Burrus executed a Forbearance and Deferral Agreement which acknowledged that Berger and Burrus's agreement to subordinate was induced by First Federal's promise to notify Berger and Burrus if Delta Towers defaulted on its obligation and to give Berger and Burrus an opportunity to cure the default, purchase the collateral mortgage note, or foreclose on their notes and buy the property at a judicial sale subject to the First Federal collateral mortgage. First Federal also agreed not to advance additional money to Delta Towers under the collateral mortgage without Berger and Burrus's consent, and Berger and Burrus agreed to defer certain payments due from Delta Towers on their vendor's lien and mortgage notes.
Prior to the execution of the September 1, 1983 collateral mortgage, First Federal entered into a loan participation agreement with First Federal Savings and Loan Association of Grand Rapids, Ohio Valley Savings and Loan, and Great Southern Federal Savings Bank. A "Joint Loan Participation Agreement" was executed August 31, 1983, and First Federal conveyed 89.1892% of the interests in the loan to the three participants while retaining a 10.8108% interest and agreeing to act as lead lender to service the loan. Among other things, this agreement provided that if Delta Towers defaulted, First Federal would institute suit on behalf of and in the name of all the loan participants. This agreement was not in authentic form and it was not recorded, but a "Substitute Participation Certificate" which designated the participants and their shares was executed on September 1, 1983 *1336 and recorded in the public records on November 16, 1983.
Delta Towers defaulted on the First Federal loan, and on September 18, 1984 First Federal filed a petition for executory process.
Before the ranking hearing, Delta Towers filed two petitions to enjoin seizure and sale, which were denied. After the ranking hearing, Delta Towers filed its third petition seeking to enjoin the executory proceeding because all participants named in the Joint Loan Participation Agreement for the $50 million collateral mortgage package were not joined as plaintiffs. The District Court found Delta Towers's third petition had merit and granted a permanent injunction prohibiting First Federal from proceeding with foreclosure by executory process.
The District Court's rulings on the ranking of the various mortgages and on Delta Towers's later petition to enjoin executory process are the subject of this appeal. If the District Court correctly enjoined the sale, it would be inappropriate for us to decide the ranking issue at this time because the case would be remanded to the lower court to proceed by ordinary process which could conceivably affect the ranking determination. However, we believe the District Court erred in issuing the injunction.

INJUNCTION ISSUE
The District Court enjoined the sale because it concluded first, that the loan participants, by the terms of the Joint Loan Participation Agreement, were partial assignees and co-owners of the collateral mortgage note, and La.C.C.P. art. 698 required that they be named as plaintiffs. Second, the Court enjoined the sale because the Agreement which gave First Federal the authority to enforce the mortgage note for the participants was not in authentic form.
First Federal contends the District Court erred because the resolution of Delta Towers's two prior petitions for injunctions decided the issue, and res judicata bars the third petition. First Federal also argues the District Court erred by holding La.C. C.P. art. 698 applicable instead of the law of negotiable instruments.
The District Court's rejection of the plea of res judicata is not erroneous. The record supports the lower court's conclusion that the earlier injunction petitions were based on grounds other than those stated in the instant petition. Although the first petition was in part based on a lack of authentic evidence, those allegations went to a moratorium agreement, not the Joint Loan Participation Agreement. Thus, the resulting dismissal with prejudice of the first injunction petition by Consent Judgment cannot support a plea of res judicata to prohibit the instant injunction petition. Delta Towers's second petition for injunction cannot support a plea of res judicata since that petition was never resolved by a judgment because First Federal amended its petition to cure the asserted defect, and the issue became moot. Therefore, res judicata is not an appropriate plea in this case because the demands in the prior injunction petitions, resolved in the earlier actions, are not founded on the same cause of action, and thus one of the requisites to support this plea is absent. See, La.R.S. 13:4231.
We also reject First Federal's argument that Delta Towers was required to assert in the two prior injunction petitions its third claim that the suit could not proceed without the participants because Delta Towers must assert all defects in the proceeding within its knowledge at one time. In a suit for injunctive relief, res judicata precludes litigation of causes which the party could have pleaded in a prior petition. See, Cooper v. Federal Land Bank of New Orleans, 197 So. 822 (La.App. 1st Cir.1940). The record, however, supports Delta Towers's argument that although it knew about the Participation Certificate which had been filed in the public records, it did not know the contents or lack of authentic form of the Joint Loan Participation Agreement, which was not filed in the public records. Hence, we hold res judicata does not apply to Delta Towers's third injunction petition.
*1337 Nevertheless, we find that the District Court erred in granting the injunction. The District Court reasoned that because First Federal sold portions of the collateral mortgage to the participants, this was a partial assignment of an incorporeal right which required First Federal and the other participants to join together to file suit pursuant to La.C.C.P. art. 698:
An incorporeal right which has been assigned, whether unconditionally or conditionally for purposes of collection or security, shall be enforced judicially by:
(1) The assignor and the assignee, when the assignment is partial; or
(2) The assignee, when the entire right is assigned.
An executory proceeding is an action to enforce a particular security device, in this case, a collateral mortgage. La.C.C.P. art. 2631. A collateral mortgage package consists of an act of mortgage, a collateral mortgage note, and a pledge of the collateral mortgage note to secure an indebtedness, usually represented by a handnote. Nathan & Dunbar, "The Collateral Mortgage: Logic & Experience" 49 La.L.Rev. 39, 52 n. 57 (1988). In this case, the collateral mortgage note was pledged only to First Federal, and First Federal retained the collateral mortgage note; First Federal, as the pledgee, is not only the proper party plaintiff, it is arguably the only party that may sue to enforce the secured instrument.
La.C.C.P. art. 696 provides:
The pledgee of a real right, or of a negotiable instrument or other incorporeal right, is the proper plaintiff to sue to enforce the pledged right.
The pledgee may enforce the entire right judicially, unless it is an obligation of the pledgor, in which event it may be enforced only to the extent of the indebtedness secured by the pledge.
Furthermore, La.R.S. 9:4421 provides in part:
A. A note whether negotiable or nonnegotiable, or other written instrument, secured by a mortgage, by a mortgage and vendor's lien or vendor's privilege, or solely by a vendor's lien or privilege, may be pledged, assigned, or collaterally assigned.
* * * * * *
F. In the case of the obligor's default on the obligation secured by the pledge, assignment, or collateral assignment, the pledgee or assignee may enforce the secured instrument according to its terms. (emphasis added.)
Moreover, by the terms of the Act of Pledge, Delta Towers agreed that the pledge would secure only those obligations owed to First Federal, for sums of money that First Federal advanced or would advance, and that First Federal, as pledgee, had the right to enforce payment on the collateral mortgage note and to execute upon and foreclose the mortgage. The Act of Pledge stated in pertinant part:
5. Pledgor agrees that if upon the occurrence of an event of default under the Loan Agreement, ... all of the Obligations... shall at the election of the pledgee [First Federal] become due and payable immediately ... and the Pledgee, if it so elects, shall have the right to enforce payment in full of all of the Obligations, to enforce payment upon the Collateral Note and to execute upon and foreclose the Mortgage.
The commercial laws in Louisiana also lend support to First Federal's position. The collateral mortgage note is a separate negotiable instrument which is enforceable by its terms, Central Bank v. Bishop, 375 So.2d 149 (La.App. 2d Cir.) writ denied, 378 So.2d 435 (La.1979), and First Federal, as holder of the collateral mortgage note, a negotiable instrument, may sue to enforce the instrument without the participants. La.R.S. 10:3-301 provides:
The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in R.S. 10:3-603 on payment or satisfaction, discharge it or enforce payment in his own name.
Therefore, the validity of the executory proceeding is not affected by the presence or absence of the participants; if the participants are aggrieved by First Federal's actions *1338 in the foreclosure suit, their remedy is to sue First Federal for breach of contract.
Nor do we believe the Trial Court was correct when it concluded the Participation Agreement must be in authentic form. The Participation Agreement is not relevant to the executory proceeding, and its lack of authenticity is not fatal to the action. Even if it were relevant, we doubt the document need be authentic under La. R.S. 13:4102(A):
Whenever the holder of bearer paper, such as a note, bond, or other instrument evidencing an obligation secured by a mortgage or privilege on movable or immovable property, seeks to foreclose by executory process, all requirements for authentic evidence regarding the transfer, assignment, pledge, or negotiation shall be inapplicable, provided that all other requirements for authentic evidence have been satisfied. (emphasis added.)
Accordingly, assuming First Federal has complied with all other authentic evidence requirements of La.C.C.P. art. 2635, it is entitled to proceed with foreclosure by executory process without joining the loan participants as plaintiffs.

RANKING ISSUE
Darryl Berger and Judith and David Burrus intervened in the foreclosure proceeding on April 30, 1986 claiming in Count I that the September 1, 1983 Act which purported to subordinate the November 1981 vendor's lien and mortgage and the notes it secures to First Federal's $50,000,000 collateral mortgage and note of September 1, 1983 was null and void because Judith Burrus did not join in and consent to the Act of Subordination as required by community property laws. In Count II of their petition, these intervenors contend even if the Act of Subordination is not null and void, the subordination is nonetheless unenforceable because First Federal breached its obligations both to Delta Towers under the loan agreement and to Darryl Berger and David Burrus in the Act of Subordination and Forbearance Agreement. In Count III, these intervenors contend that if their Act of Subordination is valid but Borg-Warner's Act of Subordination is not, their mortgage primes Borg-Warner's mortgage because they did not subordinate their mortgage to Borg-Warner's mortgage, and therefore their mortgage primes First Federal's mortgage. Borg-Warner also intervened in the foreclosure proceeding.
After the ranking hearing at which the Commissioner heard evidence only on Count I of Berger and the Burruses' intervention, First Federal urged exceptions of no right of action and no cause of action against Counts II and III of Berger and the Burruses' intervention and against the Borg-Warner intervention. The District Court sustained First Federal's exceptions of no right of action based on the Commissioner's finding:
Because the instant proceeding is a foreclosure the intervenors only right is to have their asserted privilege ranked. They do not have the right to have the Court determine all kinds of defenses and to make all kinds of claims as in an ordinary action. Their relief is either by way of injunction to stop the foreclosure or by appeal of the order authorizing the foreclosure. A third party who intervenes in an action is not entitled to additional rights or remedies which are not afforded to the defendant. Here the Subordinations granted in favor of First Federal are unconditional. If the Third Party Intervenors have other independent causes of action against First Federal, they have the right, within the prescriptive period allowed, to bring an ordinary action for breach of contract or damages for tort.
As counsel for Delta Towers pointed out ...:
"This is an executory proceeding against Delta Towers. It is strictly restricted to the foreclosure and the ranking of mortgages."
As heretofore stated, Intervenors have the right to seek an injunction but they do not have the right to change an executory proceeding into an ordinary action *1339 for a claim for breach of contract or a claim for damages, etc.
We believe the District Court erred in sustaining the exceptions. And, although the District Court sustained the exceptions after hearing evidence presented on Count I of Berger and the Burruses' intervention petition, we will discuss the ruling on the exceptions before the ruling on Count I of the petition.
An exception of no right of action merely raises the question of standing or interest. League of Women Voters v. City of New Orleans, 381 So.2d 441 (La.1980). La.C.C.P. arts. 2643 and 1092 permit anyone who holds a security right on property seized for judicial sale to intervene to claim all or part of the proceeds. The exception of no right of action to the intervention petition in this case merely raises the question of whether intervenors hold a security right on the property seized. Obviously, Berger and Judith and David Burrus hold a security right on the property seized and therefore have interest, standing, and a right of action to intervene to assert their security right and to claim proceeds of the sale. An exception of no right of action is without merit.
Nor is there merit to an exception of no cause of action. This exception merely questions the legal sufficiency of the petition. La.C.C.P. arts. 927 and 931. When, in an incidental demand, a petitioner holding a security right makes a claim for any part of the proceeds from the judicial sale of property, that petition states a cause of action. La.C.C.P. arts. 2643, 1091, and 1092 not only give a right of action to intervenors but also mean that the only cause of action that intervenors need to allege is a claim to the proceeds.
Where the record permits, this Court must decide the case. Prior to considering these exceptions, the Commissioner conducted an extensive ranking hearing during which intervenors and First Federal offered evidence. The record, which includes the documentary evidence and the testimony in the ranking hearing, we believe, is sufficient and justifies a resolution on appeal, and in this instance, we will decide the merits of Counts II and III of Berger and the Burruses' intervention.
In Count II of the intervention, Berger and the Burruses first claim First Federal breached terms of the loan agreement with Delta Towers, and this breach renders the subordination of their vendor's lien and mortgage unenforceable. Berger and the Burruses cannot complain of the alleged breach, only Delta Towers can. Although the District Court erroneously held no right of action, we agree with the resultthere is no merit to this allegation and any evidence offered by Berger and the Burruses on this issue is immaterial and irrelevant.
The second part of Berger and the Burruses' claims in Count II are material and relevant. To summarize, these intervenors contend that First Federal breached the Forbearance Agreement between First Federal and Darryl Berger and David Burrus. They further claim the Forbearance Agreement is integrally linked to the Act of Subordination, and when the Forbearance Agreement was breached, the Act of Subordination became unenforceable.
Although the Forbearance Agreement refers to the Act of Subordination, the Act of Subordination does not refer to the Forbearance Agreement. The Act of Subordination is unconditional. Although both were recorded in the public records and even though the Forbearance Agreement says it is the consideration for the Act of Subordination, they are separate, different authentic acts. After reviewing the merits of the claim, although we believe the District Court erred when it held no right of action, we agree with its finding that the Act of Subordination is not integrally related to, nor dependent on, the Forbearance Agreement. Therefore, we hold that Berger and Burrus unconditionally subordinated their vendor's lien and mortgage to First Federal's collateral mortgage.
Even if the Act of Subordination and the Forbearance Agreement were so integrally related that one must be considered with the other, the evidence does not support a breach that would make the Act of Subordination unenforceable.
*1340 In the Forbearance Agreement First Federal promised to notify Berger and Burrus of Delta Towers's default on the refinanced loan and then allow Berger and Burrus to cure the default and assume Delta Towers's indebtedness to First Federal. The evidence at the ranking hearing established that Berger and Burrus were notified of the default which led to the foreclosure, and there is no evidence nor allegation that Berger and Burrus desired to cure the default which is the only reason for the notice requirement. Hence, even if there had been a breach, it was an inconsequential breach because Berger and Burrus were not harmed by not being notified of default.
First Federal also promised Berger and Burrus that no further loans would be made to Delta Towers under the collateral mortgage without Berger and Burrus's consent, but there is no evidence of further loans. These intervenors' other allegations are of insubstantial breaches considering the transactions as a whole, and therefore the record does not support a claim that First Federal breached the Forebearance Agreement. Nevertheless, as the District Court recognized, if Berger and Burrus have an action for breach of the Forbearance Agreement, this cannot be asserted in a petition intervening in an executory proceeding.
In Count III of their petition, Berger and the Burruses contend that even if it is held that their vendor's lien and mortgage is subordinate to First Federal's collateral mortgage, their vendor's lien and mortgage should be ranked first. This contention is predicated on the theory that, if the Borg-Warner mortgage is superior to the First Federal mortgage because the Borg-Warner Act of Subordination is invalid, Berger and Burrus's vendor's lien and mortgage is also superior to First Federal's because Berger and Burrus did not subordinate their vendor's lien and mortgage to the Borg-Warner mortgage. Because we hold that Borg-Warner validly subordinated its mortgage to First Federal's, we do not have to resolve the interesting questions raised in Count III of Berger and the Burruses' intervention.
Borg-Warner intervened in the foreclosure proceeding on June 17, 1985 claiming that its mortgage primed First Federal's collateral mortgage because First Federal breached or failed to fulfill certain conditions expressed in the Borg-Warner Act of Subordination. First Federal also filed exceptions of no right of action and no cause of action to Borg-Warner's petition of intervention. The District Court sustained the exception of no right of action, and as a consequence, First Federal's mortgage held a superior position. We hold that Borg-Warner had a right of action and its intervention petition stated a cause of action for the same reasons that Berger and the Burruses had a right of action and their petition stated a cause of action. However, our review of the merits of Borg-Warner's intervention is somewhat different because, unlike Berger and Burrus, Borg-Warner subordinated its mortgage and note to First Federal's collateral mortgage by an Act which, on its face, is conditional. The relevant portion of the Act of Subordination provided:
This subordination is granted and executed by Borg-Warner subject to and upon the following express conditions:
* * * * * *
3. First Federal and Delta Towers agree that upon any default or defaults by Delta Towers to First Federal, Borg-Warner shall have the right, in its sole discretion, to cure said default or defaults, to assume the debt or debts of Delta Towers to First Federal and/or to any other holder of a security interest binding upon the mortgaged immovable property, and to assume operation and control of the business or businesses then being operated in and on the mortgaged immovable property within seven (7) days after First Federal gives Borg-Warner written notice of said default or defaults ...
4. First Federal and Delta Towers agree that Delta Towers shall (a) accrue an amount equal to ¼ of 1% of its gross room rental revenues for the period commencing *1341 January 1, 1985 and ending January 1, 1990 and (b) pay the total amount of said accrued funds to Borg-Warner on January 1, 1990.
Whether the conditions stated in Borg-Warner's subordination create a conditional obligation or merely serve as additional terms of the agreement, First Federal did not breach either. One of the above conditions requires First Federal to notify Borg-Warner of default by Delta Towers. Again, the evidence presented at the ranking hearing indicated that Borg-Warner, like Berger and the Burruses, was notified of Delta Towers's default.
The other condition requires Delta Towers to accrue ¼ of 1% of its gross room rentals from 1985 to 1990 and pay this amount to Borg-Warner on January 1, 1990. Obviously, this condition or term does not even become effective until 1990. And, under the terms of the subordination, the only remedy available to Borg-Warner should Delta Towers fail to accrue and pay this sum on January 1, 1990 is that Borg-Warner would be entitled to foreclose on the mortgage granted to it by Delta Towers. While Delta Towers may have breached their agreement with Borg-Warner, First Federal did not. Consequently, the Borg-Warner Act of Subordination is valid, and First Federal's mortgage is superior to Borg-Warner's.
On the first count of Berger and the Burruses' intervention, the Commissioner concluded, for several reasons, that First Federal had the superior mortgage on the property. By accepting the Commissioner's findings, the District Court found that, under the laws governing management of community property in Louisiana, Judith Burrus was not required to concur in the subordination. Furthermore, the District Court found, even if she did not concur, she ratified her husband's subordination of the notes and mortgage.
Darryl Berger and David and Judith Burrus argue that Louisiana's equal management of community property regime requires that the Act of Subordination is null and void without Judith Burrus's concurrence. These intervenors also argue that First Federal failed to prove that Judith Burrus ratified the subordination. First Federal, on the other hand, responds that Judith Burrus's concurrence was not required for the Act of Subordination and, even if it was required, she did concur in, or else she ratified, the subordination.
We conclude that the District Court's decision is supported by the record and the law and is therefore not manifestly erroneous. The District Court's reasons for concluding that First Federal has the superior mortgage, however, are based on a number of alternative theories. We disagree with some of these reasons. Nevertheless, our review of the District Court judgment is based on our examination of the result of that judgment, not on the particular reasons why the lower court reached that result. See, Succession of Valasquez-Bain, 471 So.2d 731 (La.App. 4th Cir.), writ denied 476 So.2d 354 (La.1985). Hence, we affirm the judgment which held that the Berger and Burrus Act of Subordination is valid and that First Federal has the superior mortgage.
The 1979 revisions to the community property articles of the Civil Code established the principle of equal management of community property. La.C.C. art. 2346 provides:
Each spouse acting alone may manage, control, or dispose of community property unless otherwise provided by law.
The community property at issue in this case is the vendor's lien and mortgage and the promissory notes they secure, acquired by David and Judith Burrus from the sale of community propertytheir interest in the hotel property.
There is an exception to the equal management principle:
A spouse who is a partner has the exclusive right to manage, alienate, encumber, or lease the partnership interest.
La.C.C. art. 2352.
The District Court found that because the testimony established that the three promissory notes were carried as an asset of Berger & Burrus Investments, a partnership owned by Berger and Burrus, *1342 article 2352 gave David Burrus, and not his wife, the right to alienate or encumber the mortgage and notes. The management, alienation or encumbrance of the notes and mortgage is not the same as the management, alienation or encumbrance of David Burrus's partnership interest. Partnership "interest" usually means a partner's share of the partnership, not the assets of the partnership. See La.C.C. art. 2812.
Moreover, Berger and Burrus, individually, acquired the vendor's lien and mortgage and the promissory notes it secured, and on the same day Berger and Burrus sold the property as individuals to Delta Towers. The evidence shows that neither Delta Towers nor First Federal dealt with Berger & Burrus Investments partnership; they conducted business with Darryl Berger and David Burrus as individuals who owned or possessed the vendor's lien and mortgage and the notes it secured.
Therefore, the District Court's holding that the mortgage and notes belonged to a partnership and that David Burrus, as a partner, was entitled to manage the assets to the exclusion of Judith Burrus is questionable.
Another exception to the equal management principle is found in La.C.C. art. 2347:
The concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovables, furniture or furnishings while located in the family home, all or substantially all of the assets of a community enterprise and movables issued or registered as provided by law in the names of the spouses jointly.
Hence, if the notes secured by the lien and mortgage are community immovables and if the subordination is an act of alienation or encumbrance, then Judith Burrus's concurrence in the subordination was required.
First Federal argues that a mortgage is merely an accessory obligation that follows the three promissory notes, and therefore the notes are incorporeal movables which may be subordinated without the spouse's concurrence. We believe, however, these notes, payable from a particular fund, are not negotiable, La.R.S. 10:3-104(1)(b), and lost their character as movables by being what some courts and commentators call "in rem" mortgage notes. Each note provided:

Limited Liability: The undersigned shall enjoy the benefits of the following stipulations, which are contained in the Act of Credit Sale with which this note is identified:
"Mortgagee herein does hereby specifically covenant and agree, in his own behalf and on behalf of any future holder or holders of the note herein issued and secured hereby, that Mortgagee or any future holder or holders of said note shall enforce payment of any obligation contained in this mortgage or in the note secured hereby, solely from the property mortgaged herein, and that no deficiency, after applying the net proceeds of any foreclosure or other judicial sale of the property, shall ever be asserted against any of the makers, their heirs, administrators, executors, successors or assigns, or in any manner realized upon the personal liability of any of the makers. This covenant is not intended as any release or discharge of any indebtedness represented by the said note and secured by this mortgage, but is a covenant on behalf of the Mortgagee and any future holder or holders of the said note not to sue the makers of the said note or the Mortgagors, or their heirs, administrators, executors, successors, or assigns, for a deficiency, and the indebtedness represented by said note shall remain in full force and effect as fully as though this covenant not to sue had not been given; ..."
[For discussion of mortgage notes and in rem mortgage notes, see Nathan & Dunbar, "The Collateral Mortgage: Logic and Experience," supra; La. National Bank of Baton Rouge v. O'Brien, 439 So.2d 552 (La.App. 1st Cir.), writ denied 443 So.2d 590 (La.1983) and Nathan, "The `in Rem' Mortgage" 44 Tul.L.Rev. 497 (1970) ]. Consequently, because these notes specifically exclude personal liability, grant a right only applicable to immovable property, and *1343 can never support a personal action to recover a sum of money, these notes are not incorporeal movables.
The Act of Subordination emphasizes that what is subordinated is the mortgage and vendor's lien. Even if the mortgage became merged in the notes it secured and assumed the characteristics of a movable, the vendor's lien did not. Unlike a mortgage, a vendor's lien is not an accessory obligation. It is not an obligation created by contract, it is created by law. The vendor's lien does not depend upon the notes, and if nothing else, does not follow the notes as an accessory obligation.
A vendor's lien and mortgage on immovable property is an incorporeal immovable. La.C.C. art. 470; Yiannopoulos, Property § 99, at 301, in 2 Louisiana Civil Law Treatise (2d ed.1980). Therefore, when David Burrus subordinated the mortgage, the notes or both, he subordinated an incorporeal immovable. Considering the character of the property, the District Court's conclusion that Judith Burrus's concurrence was not necessary is questionable.
The District Court's holding that the subordination was not an alienation or encumbrance is also questionable. A subordination, in our opinion, is more appropriately described as an alienation rather than an encumbrance. By their Act of Subordination Berger and Burrus alienated the right to a preference in ranking. Regardless of the form of the transaction, Berger and Burrus alienated a first mortgage and received a second.
Because we believe that Judith Burrus's concurrence was required for the subordination, we must consider whether she either did concur or else renounce the right to concur in the subordination. We believe that the evidence presented at the hearing supports a finding that Judith Burrus renounced the right to concur in the September 1, 1983 subordination. A spouse may renounce the right to concur in an alienation of the community immovable under La.C.C. art. 2348:
A spouse may expressly renounce the right to concur in the alienation, encumbrance, or lease of a community immovable or some or all of the community immovables, or community immovables which may be acquired in the future, or all or substantially all of the community enterprise. He also may renounce the right to participate in the management of a community enterprise ...
In the Act of Credit Sale Judith Burrus intervened and declared that "she does acknowledge, consent to and confirm the conveyance of properties made herein. Also, in the Act of Credit Sale David Burrus was named as the vendor and mortgagee, and as payee of the three promissory notes. She was not.
In the Act of Modification of the vendor's lien and mortgage and of the three promissory notes, Judith Burrus intervened and "declared that she takes cognizance of and consents to the above and foregoing act". In that Act David Burrus declared he was the owner and holder of the promissory notes. The Act of Modification also stated in part:
Mortgagee shall have the right, at its option, upon receipt of notice of default from the holder of the Senior Note [First Federal], in addition to any rights or remedies available to it under the Note of this Mortgage, to perform such acts as the Mortgagee may, in its sole discretion deem desirable or necessary to cure or cause the cure of such default.
The testimony during the hearing showed that the September 1 refinancing of the First Federal loan package, the additional advance of $7,000,000 and the Act of Subordination were considered by all the parties as an attempt to cure Delta Towers's default under the August 1982 mortgage note. The evidence on Mr. Burrus's right and attempt to cure Delta Towers's default shows Judith Burrus's renunciation of the rights she may have had to concur.
There is no requirement that a renunciation of the right to concur must adhere to a particular form. The Act of Credit Sale and the Act of Modification were authentic acts recorded in the public records. When a spouse joins in an authentic act which names the other spouse as *1344 owner of the property, mortgagee of the mortgage and holder of the promissory notes, that spouse renounces the right to concur in either an alienation or encumbrance of the property, even if it is immovable community property.
Nevertheless, even assuming that Judith Burrus was required to concur in the subordination and that there was no renunciation, we believe that the District Court was correct in concluding that Judith Burrus ratified the September 1 subordination by signing her 1983 joint tax returns taking advantage of substantial tax benefits attributable to the September 1 subordination.
Berger and the Burruses allege that the District Court erred in finding that Judith Burrus ratified the September 1 subordination because there is no evidence in the record demonstrating ratification. They also assert that this Court is precluded from considering the issue of ratification because First Federal failed to plead ratification, an affirmative defense, in its answer.
Even assuming that ratification is an affirmative defense which should have been pled in the answer pursuant to La.C. C.P. art. 1005, First Federal's failure to plead ratification in its answer does not bar it from raising the issue in the trial court. See, La.C.C.P. art. 1154. Therefore, in this case, because the issue of ratification was raised in the lower court without objection by the Intervenors, if necessary, we deem the pleadings enlarged to include this issue.
Even before the ranking hearing, First Federal raised the issue of ratification in its motion to compel discovery of the Burruses' tax returns and other financial records which, it argued, were relevant to ratification. In the ranking hearing, First Federal very clearly introduced evidence to support proof of Judith Burrus's ratification.
The evidence established that Judith Burrus followed and regularly discussed her husband's business dealings with David Burrus, that the Burruses, through one of David Burrus's partnerships, received and took advantage of over $1,000,000 of cash tax savings in consideration from Delta Towers for the September 1 subordination, and that Judith Burrus signed the 1983 tax returns which set forth the special tax losses in partnership and subchapter S corporation tax schedules.
Although Judith Burrus's acceptance of these tax benefits alone may support a finding that she ratified the subordination, see, Nelson v. Walker, 250 La. 545, 197 So.2d 619 (1967) and Alphonse Brenner Company, Inc. v. Phillips, 338 So.2d 183 (La.App. 2nd Cir.1976), we believe that the evidence presented at trial supports a finding that Judith Burrus knew, or at least is chargeable with knowledge of, the subordination and the benefits she received from the subordination. Otherwise, it would be patently unfair to allow someone to obtain a benefit and at the same time claim ignorance of the source of the benefit.
Overall, based on the evidence in the record about the tax benefits the Burruses received as a result of the subordination, we find no manifest error in the District Court's conclusion that First Federal proved Judith Burrus had ratified the subordination. The District Judge properly gave effect to the September 1 subordination and properly ranked First Federal's collateral mortgage superior to Berger and the Burruses' vendor's lien and mortgage and Borg-Warner's mortgage.
For the foregoing reasons, the judgment of the District Court on the injunction petition is reversed; the judgment on the ranking hearing is affirmed. All costs of this appeal are assessed equally to Delta Towers, Berger and the Burruses, and Borg-Warner.
AFFIRMED IN PART; REVERSED IN PART.
CIACCIO, J., concurs with reasons.
CIACCIO, Judge, concurring.
I do not agree that the vendor's lien and mortgage notes are community immovables. These notes gave to Burrus the right to claim the unpaid balance of the purchase price of the property he had sold.
*1345 As such the right, represented by the notes, is an incorporeal movable. La.C.C. Art. 473, Yiannopoulos, Property Sec. 99 at p. 301, in 2 Civil Law Treatise (2d ed.1980).
Because the notes were incorporeal movables La.C.C. Art. 2347 is not applicable and Burrus did not need the concurrence of his wife to validate the acts of subordination.