892 So.2d 675 (2004)
Terry HOLLAND
v.
Nelson P. BARRIOS, June T. Barrios, Junel B. Cerniglia, Carmen B. Billiot, Bari B. Arnona, Pam A. Barrios & Junel, L.L.C.
No. 04-CA-883.
Court of Appeal of Louisiana, Fifth Circuit.
December 28, 2004.
Stephen J. Hornyak, Gregory C. Bachaud, Gretna, LA, for Plaintiff/Appellant, Terry Holland.
Philip A. Gattuso, Gretna, LA, for Defendants/Appellees, Nelson P. Barrois, June T. Barrois, Junel B. Cerniglia, Bari B. Arnona, Carmen B. Billiot, Pam A. Barrois, and Junel, L.L.C.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA, and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
The plaintiff appeals the dismissal of his suit by summary judgment. We affirm, for the reasons that follow.
On November 24, 2003, Terry Holland filed a Petition for Declaratory Judgment and To Rescind Donations against Nelson P. Barrois and June T. Barrois (hereafter "Mr. and Mrs. Barrois"), as well as their children, Junel B. Cerniglia, Carmen B. Billiot, Bari B. Arnona, and Pam A. Barrois (hereafter "Barrois Children," all adults); and Junel, L.L.C., a family corporation.[1] The original petition later was supplemented by an amending petition.
The plaintiff alleged that on or about August 2, 2000, he entered into an agreement with Mr. and Mrs. Barrois to purchase their real property located at 1611 *676 Franklin Avenue in Gretna, Louisiana. The plaintiff had leased the property from Mr. and Mrs. Barrois for 20 years prior to the written agreement. He operated a business at the location. He asserted that for several months prior to September 2003, Mr. and Mrs. Barrois, acting through their sons-in-law, S.J. Cerniglia and David Billiot, harassed and threatened to evict the plaintiff from his occupancy of the property, by unlawfully entering the business premises and making verbal threats in the presence of customers, which undermined the plaintiff's business and resulted in damages to him. In addition, the plaintiff alleged that Billiot attempted to force him to rescind the purchase agreement and threatened to have the plaintiff evicted if he refused to rescind the agreement.
On October 3, 2002, Mr. and Mrs. Barrois executed an act of donation inter vivos to the Barrois Children. The act of donation was recorded in the parish conveyance records. On October 14, 2003, eleven days after the act of donation was signed, the Barrois Children donated their interest in 1611 Franklin Avenue to Junel, L.L.C., a Louisiana corporation created on the same day as the donation.
On November 11, 2003, the plaintiff recorded the August 2, 2000 agreement in the parish conveyance records. Subsequently he filed this suit, in which he sought to have the trial court render judgment fixing the parties' rights, status, and other legal relations. He alleged that both the donations are continuing attempts to undermine his rights under the August 2, 2000 agreement. He prayed that both acts of donation be set aside, annulled and rescinded as efforts to impair his rights. Alternatively, he asserted that all the defendants had damaged and continued to damage his business located on the premises, and he requested damages against the defendants.
The plaintiff asked the trial court to render judgment finding the agreement of August 2, 2000 valid and enforceable; to hold that the defendants have impaired his rights; to require the defendants to immediately perform their obligation under the contract of August 2, 2000, and deliver title to the plaintiff, or to immediately furnish adequate security for the eventual performance under the contract, at the plaintiff's option; to rescind the purported donations of October 3, 2003 and October 14, 2003; to find that the defendants have damaged the plaintiff; and to assess damages against them to compensate the plaintiff for his losses to his business.
In answer to the petition, the defendants asserted that the agreement of August 2, 2000 is a nullity, because the property is part of the marital community between Mr. and Mrs. Barrois and, as community property, the signature of both spouses is required. Since Mrs. Barrois did not sign the document as an owner, but only as a witness, the defendants asserted it was invalid as a purported agreement to alienate community property. Further, the defendants pointed out that the agreement was not recorded prior to either of the acts of donation.
The defendants further stated that they have never threatened to evict the plaintiff as long as he pays the rent agreed upon between the parties. They admitted that Mr. and Mrs. Barrois transferred the property to their children and that their children in turn transferred it to an L.L.C. They asserted, however, that it was not done to undermine the plaintiff's rights, but to facilitate handling of property taxes and maintenance of the property and for continuity of ownership, considering the fractional interests.
The defendants brought a motion for summary judgment on the basis that the Offer to Purchase is an absolute nullity, *677 because it was signed only by Mr. Barrois and one party may not transfer his undivided interest in the community prior to its termination. Further, the defendants argued that the agreement is ineffective against third-party transferees, because the plaintiff did not record the Offer to Purchase until November 12, 2003.
The document at issue states as follows:
OFFER TO PURCHASE
Terry Holland, herein after [sic] called Purchaser, offers to purchase said property, 1611 Franklin Street, in the City of Gretna, Parish of Jefferson, State of Louisiana, and more particularly described as follows: TWO CERTAIN LOTS OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes and advantages thereunto belonging or in anywise appertaining, situated in the Parish of Jefferson, State of Louisiana, in that part known as the town of McDonoghville, forming part of the City of Gretna, in Square 109, designated as Lots 2 and 3, bounded by Franklin, Solon, Kepler and Monroe Streets, measuring, each, 60 feet front on Franklin Street by 125 feet in depth between equal and parallel lines, more or less, from Nelson Barrios, herein after [sic] call [sic] owners for $114,000.
Purchaser has already paid $24,000 of purchase price in the form of improvements to the said property.
The offer does not effect [sic] the current leasing of said property. The current lease agreement will remain valid until acquisition of property is finalized by purchaser.
The offer becomes active upon written notification to purchaser or by death of owner.
Purchaser will have 180 days from notification or death of owners to execute the sale by paying the remaining $90,000.
All parties by evidence of their signature agree and understand this agreement.
The agreement was signed on August 2, 2000 by Terry Holland as "Purchaser," by Nelson Barrois as "Owner," and by June Barrois as "Witness." There were signatures of two other witnesses, also. We note, further, the original document was never notarized, although the copy that is in the record was notarized as "A True Copy." Hence, the document cannot be considered an authentic act under Louisiana law. As mentioned above, the document was not recorded in the public records until November 12, 2003.
In response to the defendants' Motion for Summary Judgment, the plaintiff filed his own affidavit, in which he made the following statements:
Prior to signing the Agreement to Purchase on August 2, 2000, Mr. and Mrs. Barrios [sic] and I had many discussions over it to provide a way for me to purchase the property at 1611 Franklin Avenue, Gretna, Louisiana, where I had built the business up at that location over the past fifteen (15) to twenty (20) years.
I always understood that I was going to purchase the place from them, but as time went by and the Barrioses [sic] were aging, the three of us understood that provision would have to be made in writing if I was to have the legal right to purchase, in case something would happen to them. It was intended to provide that security for me for all that I had invested in the property over the years, and Mrs. June would benefit if she was left a widow.
After talking a lot about it, we signed the Purchase Agreement for me to buy the property from them on the terms *678 they had drawn up at the office of an attorney or business office in Algiers. We always got along, Mr. Nelson and Mrs. June and I, and we even had a kind of personal relationship developed over the years.
After the Agreement to Purchase was signed, Ms. June never said anything or acted like she was not in agreement anymore with the contract we all signed on August 2, 2000.
After August 2, 2000, she never told me that it was only Mr. Nelson that was obliged to honor the agreement, not her. Mr. Nelson never said anything either. And their daughters and their husbands knew that the property was under obligation to sell it to me. No one in the Barrios [sic] families did anything to show me or tell me or anyone else I know that we didn't have a legal agreement. For almost three years after signing the agreement, Ms. June never said that it was not her intention or that she regretted it or anything like that. It was only after the meeting they called me to on September 10, 2003 at their house that they told me to give up my agreement to purchase. Their son-in-law, David Billiot[,] was there. He told me I have to let them out of the purchase agreement right away and he was going to take me to a notary office right now and I was to renounce the agreement of August 2, 2000 or else I will be evicted from the property and my business by six (6) o'clock that day. I felt threatened and intimidated and was afraid he'd ruin me, but I refused to go with him.
On or about September 26, 2003, their lawyer, Mr. Gattuso[,] phoned me and asked would I agree to meet with them again on October 1, 2003 at his office. I agreed with the condition that only Mr. and Mrs. Barrios [sic] be there, without their daughters and their husbands. At that meeting, I discussed having a new written lease for the apartments but which would raise my rentals I would have to pay the Barrioses [sic]. After discussions there was a verbal agreement that I would pay $400.00 per month more after I finished the apartments by December 1, 2003. At the end of the meeting, Mrs. June said that I would have to give up the August 2, 2000 Agreement to Purchase. I refused and walked out of the office.
On November 12, 2003, Mr. Gattuso mailed me a lease which was not acceptable because there was a provision in it that I give up my right to my Agreement to Purchase so I refused. I learned later that he was still negotiating for Mr. and Mrs. Barrios [sic] even though they were no longer the owners of the property, and no one informed me of the transfer they made on October 3, 2003.
Since I was not told of their transfer of October 3, 2003, I prepared a lease of my own for Mr. & Mrs. Barrios [sic] who I believed were still owners. This lease was to preserve my rights to purchase the property from them, and I would expand the use of the building and premises at 1611 Franklin Avenue at my cost, and I would pay more rent. My lease was rejected.
The second act of transfer by donation by the Barrios' [sic] daughters to Junell, L.L.C. took place on October 14, 2003 while I was still negotiating with Mr. Gattuso, on behalf of Mr. and Mrs. Barrios [sic]. It wasn't until later in November that I learned about these donations.
The trial judge granted summary judgment, stating,
I am going to grant the motion for summary judgment....I am basing it on the *679 document itself, and say it is fatally flawed....[T]he fact that she signed as a witness is  you can't use your other argument, because she specifically is going to have to sign as a participant, not as a witness.
On appeal, the plaintiff makes the following assignments of error:
1. The court erred by finding, as a matter of law, that the Offer to Purchase was "fatally flawed."
2. The court erred by not finding, as a matter of law, that June Barrios' [sic] signature on the Offer to Purchase was confirmation of her voluntary obligation to Appellant, Terry Holland.
3. The court erred by not finding, as a matter of law, that the donation from the Barrioses [sic] to their children and the donation from the children to Junel, L.L.C. were not protected by the Public Records Doctrine because of the gratuitous nature of the donations and that the children, as both donees and subsequently as donors, were not bona fide purchasers.
4. The court erred by not finding, as a matter of law, that the donation from the Barrioses [sic] to their children and the donation from the children to Junel, L.L.C. were not protected by the public records doctrine because of the elements of bad faith, circumvention and fraud interlaced with the actions of Appellees.
5. The court erred by not finding, as a matter of law, that the use of summary judgment was inappropriate since the factual issues raised in the pleadings and documents were adequate to have caused the matter to proceed to trial.
6. The court erred by ignoring the listed disputed facts rooted in the issues of law present in this case in appellant's Memorandum.
In opposition to the appeal, the defendants make the following arguments: (1) Mrs. Barrios signed as a witness and a witness to a contract cannot be a party to it. (2) A contract to sell community property signed during the community regime by only one spouse as a party is an absolute nullity and cannot be ratified by the other spouse. (3) The offer to purchase by its own terms was not in effect on the date the owners transferred the property to their children and when the children in turn transferred the property to the limited liability company. (4) Finally, the public records doctrine requires that the plaintiff record such a contract for it to be effective against third parties.
La.C.C. art. 3310 states that a witness to an act, authentic or otherwise, is not a party to it. Although this article appears in the section of the Civil Code dealing with the effect and rank of mortgages, we construe it to have a broader application to recorded documents generally. See, Revision Comments  1992, following La.C.C. 3310, Comment (c); Revision Comments  1992, following La.C.C. art. 3309.
Considering these provisions, as well as the accepted practice for witnesses to see only the signing of a contract without being privy to its terms and conditions, we conclude that Mrs. Barrois' signature, clearly designated as "Witness," cannot be construed to make her a party to the contract.
The community status of the subject property is not disputed, nor is it disputed that the Offer to Purchase was signed during the existence of the community between Mr. and Mrs. Barrois. La.C.C. art. 2337 provides that a spouse may not alienate, encumber, or lease to a third person his undivided interest in the community or *680 in particular things of the community prior to the termination of the regime. Further, the concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovables. La.C.C. art. 2347.
Since we have already determined that Mrs. Barrois did not sign the document as a party, but merely as a witness, we conclude that the agreement is unenforceable because it purports to alienate, encumber or lease community property based on Mr. Barrois' signature alone.
Because we find that the agreement is unenforceable, we need not address the other issues raised by the appellant.[2]
For the foregoing reasons, the judgment is affirmed. Costs of appeal are assessed against the plaintiff/appellee, Terry Holland.
AFFIRMED
NOTES
[1] We note that the petition and the pleadings filed by the plaintiff refer to the last name of the defendants as "Barrios," but the defendants' pleadings, as well as the documents attached as exhibits, show the defendants' last name as "Barrois." (Similarly, Mrs. Barrois signed her full legal name as "June Trepagnier S. Barrois," but the pleadings spell her middle name as "Trapani" rather than "Trepagnier.") Neither party has sought amendment to correct these errors. In this opinion we shall refer to the defendants under the correct form of their name, although we have not changed the caption of the case, in which the name is misspelled.
[2] Parenthetically, we note a problem that was not addressed by the parties. Considering our ruling above, the following comments are dicta because they are not necessary to resolution of this case.

The agreement may be void on its face, because it purports to require transfer of property by a person after that person's death. The provision that the "offer becomes active ... by death of owner" apparently is a suspensive condition that is null because it is an impossible condition. La.C.C. art. 1769. Succession  the transmission of the estate of the deceased to his successors  occurs at the death of a person. La.C.C. arts. 871, 934. On the death of a property owner, therefore, his estate is transmitted to his successors. A person cannot transfer property after his own death, because once he has died his estate has been transmitted to his successors by operation of law. The person can direct the disposition of his estate  choose his successors  by making a testament. Hence, it appears the transfer contemplated by the Offer to Purchase in this case could be effective only by testamentary disposition. However, a testament must be in proper form to be valid. The Offer to Purchase does not fit the formal requirements for a valid testament and, hence, it cannot be effective as such. See La.C.C. art. 1570; La.C.C. art. 1574.