MARION F. EDWARDS, Judge.
 

 12Defendants/Appellants, Lionel and Nunnie Webre, appeal a judgment of the district court in favor of plaintiffs/appel-lees, Anthony and Hope Zeller, ordering the Webres to convey the rights, title, and interest in certain immovable property upon payment of all sums due.
 

 In June 2007, Anthony and Hope Zeller filed a Petition for Damages and Enforcement of Contract, averring that they entered into a contract with Lionel and Nun-nie Webre to purchase a home at 702 Kinler Street in Luling, Louisiana. The contract price was $30,000, of which $29,000 was financed by the owners. The Zellers urged that they had paid 120 payments of $300 per month and that the Webres were refusing to follow the terms of the contract. They requested specific performance, or, in the alternative, return of monies paid, and damages.
 

 The Webres filed an Answer and Recon-ventional Demand, stating that Nunnie Webre did not sign nor did she have knowledge of the agreement. Further, it was alleged the Zellers lived on the property as lessees. The Webres averred that the Zellers signed rental agreements on the property on September 9, 1993; April 17, 2004; March 2, 2006; and March 18, 2007, and that they have repeatedly failed to timely pay the rent due. They demanded $47,884 in late payment fees.
 

 IsFolIowing trial, the court granted judgment in favor of the Zellers, finding that it was the intent of the parties to have a lease/purchase agreement, that the monthly rentals would be applied toward payment of the principle and interest, and that the Webres were entitled to reimburse
 
 *57
 
 ment of all insurance premiums. The court ordered that, upon payment of all sums due to the Webres, they were to convey the property to the Zellers. All other requests were denied and dismissed.
 

 The Webres appeal.
 

 The document at issue is handwritten and reads:
 

 Anthony & Hope Zeller agree to buy from Lionel and Nunnie Webre a wood frame house located at 702 Kinler St. Luling.
 

 Price $30,000
 

 Owners will finance $29,000 Balance. After a $1000 down payment is made by the Buyers. a[sic] interest rated of 8% over 180 months (15years)
 

 Seller will pay insurance premiums from an amount that will be added to monthly payment from Buyer. This will be set up just as a commercial financial institution would do it.
 

 Both Parties agree that paperwork regarding the sale of said property is to be paid by Buyer. The period prior to the Sales transaction specifically Sept 1 until final paper work is done will be han-deled [sic] as a lease with intentions to buy. This monthly Rate will be $300 per month.
 

 The purpose of this hand written paper is so all parties involved will have a full understanding of the transactions that follow and will lead to the final Act of Sale.
 

 This document will contain conditions of interest to both parties (buyers and sellers) any special concerns should be listed here so they can be included in the final draft of Act of Sale.
 

 The document is signed by Lionel We-bre, Hope P. Zeller, and Anthony Zeller and is dated September 21,1993. On June 4, 2007, it was filed in the Clerk of Court’s Office for the Twenty-Ninth Judicial District.
 

 At trial, Mrs. Zeller testified that the payments made by them were “rent to own. We were going to pay $300 a month for 15 years and then we were going to [4own the house.” Both the Webres knew the Zellers were buying the house. An amount of $500 was initially paid on the down payment at the time of the agreement. They tried to complete the down payment a couple of times but were told by the Webres that they did not want to do the paperwork at that time. Finally, on April 7, 2007, Mrs. Zeller left the payment with Mrs. Webre. That check was cashed. Mr. Zeller testified to the same effect and further stated that he did upkeep on the house because there was an agreement to buy it. Mr. Zeller understood that, at the end of the fifteen-year period, papers would be drawn up, and “I would have my house after paying him $300.00 a month.” No formal act of sale took place.
 

 Mr. Webre testified that, in 1993, the Zellers expressed an interest in buying the house, and he was interested in selling it. He stated that the paper at issue was an agreement by him to sell. The document stated that the Zellers agreed to buy the house, and he intended that, when he received the entire down payment, the paperwork would be done. Since the final papeiwork had never been done, he considered the property as being leased. Although the monthly payments were not always timely, the entire monthly amount has been paid. The sale documents were not prepared because the Zellers had not completed their down payment. Mr. We-bre told his wife that he drafted the agreement.
 

 Mrs. Webre, a former real estate agent, testified that she did not know about the agreement to sell prior to the execution of the document, and she was angry when
 
 *58
 
 she was shown the paper about a week later. She did not want to sell the property and had not intended to do so, but she never put anything in writing. She never refused any payments offered by the Zel-lers. The second part of the deposit was received on April 7, 2007, but, according to Mrs. Webre, the Zellers never attempted to complete payment before that time. A number of receipts admitted |r,into evidence were signed by Mrs. Webre on many of which she had scratched out the notation “rent.” Mrs. Webre did not offer an explanation.
 

 Entered into evidence were a number of invoices and receipts for improvements on the property. Further, a document meant for the zoning board, written and signed by Mr. Webre in connection with a home business application on behalf of Zeller, was introduced. That paper stated that Webre was the property owner and that “Anthony [Zeller] is renting with an option to purchase this property.”
 

 On appeal, the Webres urge the contract was null because it involves alienation of community property without spousal consent and because it fails to satisfy the formal requirements for a sale of immovable property.
 

 Initially, we note that it is undisputed that Mr. Webre wrote and provided all of the language in the agreement. Accordingly, any ambiguous language is to be interpreted against him and in favor of the Zellers.
 

 It is undisputed that the Kinler Street property is community property. The Webres cite La. C.C. art. 2337, which holds that a spouse may not alienate, encumber, or lease to a third person his undivided interest in the community or in particular things of the community prior to the termination of the regime. The Official Comments to that article state that this provision does not prevent the alienation, encumbrance, or lease to a third person of a portion of the community or things of the community in full ownership, but is aimed simply at preventing a third party from owning an undivided interest in the community or in particular things of the community. In the present case, it is not argued that Mr. Webre was attempting to sell only his own undivided interest in the property.
 

 According to La. C.C. art. 2347, the concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovables. When the | (¡concurrence of the spouses is required by law, the alienation, encumbrance, or lease of community property by a spouse is relatively null unless the other spouse has renounced the right to concur. La. C.C. art. 2353. A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A contract that is only relatively null may be confirmed. La. C.C. art. 2031. Confirmation of a contract, as referred to in Article 2031, involves making the contract valid by formal assent.
 
 [1]
 
 La. C.C. art. 1843 states that ratification is a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority. Tacit ratification results when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefit of that obligation.
 

 [A]ssent can be evidenced through the typical actions signifying ratification of a
 
 *59
 
 defective contract.... While no clear definition exists in the statutes or case law as to what confirmation acts validate a relatively null contract, jurisprudence makes it clear that acts sufficient to ratify a contract will act as confirmation of the contract. Confirmation and ratification are used almost interchangeably, or as non-exclusive actions. When a contract is ratified through the subsequent actions of the parties, that contract is confirmed by that ratification. ...
 
 [2]
 

 There is no indication in the record that Mrs. Webre has specifically renounced her right to concur. However, it appears that the Webres have incorrectly equated the concurrence required by Article 2347 with the initial consent and/or lack of Mrs. We-bre’s signature on the agreement.
 

 A tacit confirmation may result from voluntary performance of the obligation. La. C.C. art. 1842. In the present case, Mrs. Webre acknowledged that |7she became aware of the agreement about one week after it was confected. On approximately thirty-eight receipts, which she signed herself, she scratched out the notation of the payment as “rent.” There is no evidence in the record that she did not do . so voluntarily or that she undertook any action to indicate or demonstrate that she did not intend to honor the contract. While Mrs. Webre obviously understood the import of the act, she offered no explanation for her failure to take any steps to oppose it. Additionally, we note the answer filed by the Webres stated that “[t]he defendants agree to sell the property to the plaintiffs as per the purchase agreement signed on September 21,1993.”
 

 A number of Louisiana cases support the proposition that the non-signing spouse may subsequently ratify an unsigned agreement affecting community property, including immovable property.
 
 [3]
 
 In
 
 South Central Bell Tel. Co. v. Eisman,
 
 the trial court gave credence to the wife’s testimony that she called the company officials to object and complain about trespass on her property. In
 
 Kee v. Camel Const.,
 
 ratification by the wife was found to have occurred to cure the relative nullity in a grant of a right-of-way executed only by the husband. The project for which the right-of-way was granted lasted over eighteen months. Mrs. Kee was obviously aware of the project, voiced no objection to her husband signing the right-of-way agreement, and was obviously aware of the agreement as she signed the agreement in the capacity of a witness. In
 
 First Fed. Sav. and Loan of Warner Robins,
 
 the appellate court found the trial court correctly determined that the wife ratified a subordination on a mortgage by signing her joint tax returns, taking advantage of substantial tax benefits attributable to the subordination.
 

 | sIn the present case, we find that the conduct of Mrs. Webre, a person experienced in real estate transactions, operated as a tacit confirmation sufficient to cure the relatively null agreement.
 
 [4]
 
 Although Mrs. Webre did not sign nor subsequently
 
 *60
 
 wish to sell the property, the pleadings, evidence, and testimony supports a finding that her actions and/or inaction confirmed the contract.
 

 The Webres cite a case from this Court,
 
 Holland v.
 
 Barrios,
 
 [5]
 
 for the proposition that La. C.C. art. 2347 is strictly enforced. In that case, the husband executed an agreement to sell a community immovable to a third party; his wife signed as a witness, then the couple subsequently donated the immovable to their children. The third party sought specific performance of the agreement to sell and the nullity of the donation. The Barrios’ children asserted that the agreement to sell was a nullity because the wife did not sign the agreement as an owner, but only as a witness. We concluded that, since the wife “did not sign the document as a party, but merely as a witness, ... the agreement is unenforceable because it purports to alienate, encumber or lease community property based on Mr. Barrios’ signature alone.” We do not find that opinion controlling here.
 
 Holland v. Barrios
 
 involved a summary judgment in which the court made its determination based on the face of the agreement, without testimony or other evidence other than the third party’s affidavit. Further, that court did not directly address the issue of confirmation or ratification of a relatively null contract.
 

 As to the form of the agreement, La. C.C. art. 2620 defines an option to buy or sell as a contract whereby a party gives to another the right to accept an offer to sell, or to buy, a thing within a stipulated time. Such option must set forth the thing and the price, and meet the formal requirements of the sale it contemplates. A 19sale or promise of sale of an immovable must be made by authentic act or by act under private signature. La. C.C. art. 2440. An act that fails to be authentic because of the lack of competence or capacity of the notary public, or because of a defect of form, may still be valid as an act under private signature. La. C.C. art. 1834. The Civil Code further requires that an act under private signature need not be written by the parties, but must be signed by them. La. C.C. art. 1837. However, the Official Comments under this Article, Section (b) states in pertinent part: “This article is not intended to change the jurisprudential rule that an Act under private signature is valid even though signed by one party alone....”
 

 The cases which support the proposition expressed in the comments above are legion. See:
 
 Miller v. Douville,
 
 45 La.Ann. 214, 12 So. 132 (La.1893) (A written promise to sell real property is valid, and may be enforced, although not signed by the obligee.)
 
 Joseph v. Moreno,
 
 2 La. 460 (1831) (A written promise to sell signed only by the vendor was valid and that acceptance by the vendee could be established by extraneous evidence to the written agreement.)
 
 Miller v. Miller,
 
 335 So.2d 767 (La.App. 3 Cir.l976)[,]
 
 writ denied
 
 [,] 338 So.2d 927 (La.1976) (There is no requirement that a written promise to sell be signed by both parties. Acceptance by the vendee could be established by evidence extraneous to the written instrument.)
 
 Cerami v. Haas,
 
 195 La. 1048, 197 So. 752 (La.1940). (The law does not require that the acceptance of a contract be expressed on its face, nor is it essential that the Act be signed by the party in whose favor it is made. The acceptance may result from his acts in availing himself of its stipulations or in doing some
 
 *61
 
 act which indicates his acceptance.)
 
 Succession of Jenkins,
 
 91 So.2d 416 (La.App. 2 Cir.1956). (The consent and agreement of vendees may be shown otherwise than by the signing of the Act of Sale itself.)
 
 Alley v. New Homes Promotion, Inc., supra[,
 
 247 So.2d 218 (La.App. 4 Cir.1971)]. (An acceptance of a written offer may be proved by some unequivocal act of the offeree, if the terms of the contract are clearly indicated in the written offer.)
 

 Thus, the courts of this state have repeatedly declined to find an agreement to purchase or sell invalid simply because one party failed to sign the instrument but |1flat some point later that same party exhibited some outward manifestation of acceptance beyond oral assent.
 
 [6]
 

 Just as Mrs. Webre’s actions and/or inaction indicate that she confirmed the agreement, so also do they serve to indicate as an outward manifestation, or ratification of her acceptance of such. The existence of the subsequent “leases” does not invalidate the prior agreement which designates that the rent would be applied to the purchase price.
 

 For these reasons, we affirm the judgment of the trial court. Because of our findings above, we find it unnecessary to address the Webres remaining assignments of error.
 

 AFFIRMED.
 

 [1]
 

 .
 
 Rowan
 
 v.
 
 Town of Arnaudville,
 
 02-0882 (La.App. 3 Cir. 12/11/02), 832 So.2d 1185, 1190 (citation omitted);
 
 Meaghan Frances Hardcas-tle Trust v. Fleur De Paris, Ltd.,
 
 04-1371 (La.App. 4 Cir. 6/29/05), 917 So.2d 448.
 

 [2]
 

 .
 
 Id.
 

 [3]
 

 .
 
 First Fed. Sav. and Loan of Warner Robins, Ga. v. Delta Towers, Ltd.,
 
 544 So.2d 1331 (La.App. 4 Cir.1989),
 
 writ denied,
 
 548 So.2d 1250 (La.1989);
 
 Tri-State Bank and Trust v. Moore,
 
 609 So.2d 1091 (La.App. 2 Cir.1992);
 
 Kee v. Francis Camel Const.,
 
 532 So.2d 378 (La.App. 3 Cir.1988);
 
 South Central Bell Tel. Co. v. Eisman,
 
 430 So.2d 256 (La.App. 5 Cir.1983),
 
 writ denied,
 
 437 So.2d 1154 (La.1983).
 
 See also, Hemb v. Landry
 
 1998-0761 (La.App. 4 Cir. 4/7/99), 731 So.2d 1031.
 

 [4]
 

 .
 
 See, e.g., Vernon Parish Police Jury v. Buckley,
 
 02-91 (La.App. 3 Cir.2002), 829 So.2d 610,
 
 reh’g denied, writ denied,
 
 03-0040 (La.10/10/03), 855 So.2d 345.
 

 [5]
 

 . 04-883 (La.App. 5 Cir. 12/28/04), 892 So.2d 675,
 
 writ not considered,
 
 05-0250 (La.4/1/05), 898 So.2d 384.
 

 [6]
 

 .
 
 Milliman v. Peterman,
 
 519 So.2d 238, 241-42 (La.App. 5 Cir.1988),
 
 writ denied,
 
 520 So.2d 752 (La.1988).