30 So.3d 96 (2009)
Misty SOLET
v.
Tayaneka S. BROOKS.
No. 2009 CA 0568.
Court of Appeal of Louisiana, First Circuit.
December 16, 2009.
*97 Misty Solet Houma, LA, In Proper Person Plaintiff-Appellee.
Patricia H. Oster, Southeast Louisiana Legal Services, Hammond, LA, for Defendant-Appellant, Tayaneka S. Brooks.
Before PARRO, KUHN, and McDONALD, JJ.
PARRO, J.
Tayaneka S. Brooks appeals a judgment of eviction, ordering her to vacate the property she is occupying, which is owned by David and Misty Solet. For the following reasons, we reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
After being displaced by Hurricane Katrina in 2005, Ms. Brooks and her three children lived several years in Kansas City, Missouri, before she decided to return to Louisiana. Working through a real estate agent, on July 17, 2008, she entered into a "Lease to Purchase Option Agreement" (the Agreement) concerning a house owned by the Solets in Denham Springs. The Agreement granted Ms. Brooks "an exclusive option to purchase" the property, called for her to pay an initial "non-refundable fee" of $35,500 "toward the purchase of the property," noted that she was required to make monthly *98 payments in the amount of $1650 during the "option to purchase period," and required her to pay property taxes and insure the property for $239,000. The Agreement further stated that at the expiration of the option period, the purchase price for the property was $239,000, but if the "Buyer/Tenant" exercised the option and was "not in default of the Lease Agreement," the purchase price would be the "actual mortgage(s) payoff amount." The Agreement did not include a legal description of the property, and the Solets did not record the Agreement in the conveyance or mortgage records of the parish.
Ms. Brooks paid the $35,500 "non-refundable fee" and the August and September payments to the Solets' real estate agent. The following month, the agent told her to make the October payment directly to the holders of the first and second mortgages. Because the monthly payments had included a $100 monthly property management fee for the agent, Ms. Solet told Ms. Brooks the remaining payments would be only $1550 per month. This reduction in the amount of monthly payments was not put in writing.
Both mortgage holders told Ms. Brooks that unless they had something in writing from the Solets, they could not discuss the mortgage accounts directly with her. During a three-way telephone conversation among Ms. Brooks, Ms. Solet, and Countrywide Mortgage Company (Countrywide) concerning the first mortgage, Countrywide informed them that the amount paid on the mortgage by the agent was only $34,800 and that the August payment had not been paid to Countrywide. Despite these difficulties, Ms. Brooks paid the October payment to the two mortgage holders. She also tried to purchase insurance on the house, but was told that she could not insure it, because she was not the owner and there was no recorded document showing her interest in the property. She could only obtain renter's insurance on the contents of the house. Ms. Solet then renewed the insurance, and she and Ms. Brooks verbally agreed that the insurance premium would be paid as part of the monthly payment for an additional $40 per month. This agreement was also not put in writing. Ms. Brooks went to the courthouse in Livingston Parish to get the information needed to pay the property taxes and was told something would be mailed to her. However, because the property was not in her name, she never received that information; apparently it was sent to the Solets' forwarding address.
Hurricane Gustav had passed through the area, causing fallen trees, branches, and other damage to the property, which ultimately cost Ms. Brooks $1200. Because of this and other financial difficulties, she did not pay the November and December payments, and on December 29, 2008, the Solets sent her a letter and a ten-day notice to vacate. Ms. Brooks did not move out, and on January 20, 2009, Ms. Solet filed a petition for eviction in the City Court of Denham Springs. Neither party was represented by counsel at the January 28, 2009 hearing. Ms. Solet and Ms. Brooks testified, and Mr. Solet interjected unsworn commentary. Although Ms. Brooks offered to bring all the payments current and make the remaining payments by automatic withdrawals from her account, Mr. Solet insisted on a judgment of eviction, because he was tired of dealing with her. Finding the monthly payments had not been made as agreed, the court rendered a judgment of eviction, ordering Ms. Brooks to vacate the premises by February 12, 2009. The judgment was signed January 28, 2009, and Ms. Brooks filed a motion for appeal on February *99 9, 2009.[1]
In this appeal, Ms. Brooks assigns as error the court's conclusion that the Solets were legally entitled to evict her under the Agreement. She further contends the court erred in granting the judgment of eviction in the absence of the statutory notice required by LSA-R.S. 9:2945, and in allowing the Solets to proceed via summary proceeding.

DISCUSSION
The Agreement that is the source of this conflict has many irregularities. First, the "Seller/Landlord" of the property is shown as Dave Solet. However, the Agreement is signed only by Misty Solet as the Seller/Landlord, and at the hearing, the Solets claimed they both owned the property. Second, the Agreement states that the "Seller/Landlord and Buyer/Tenant have together executed a prior lease agreement, the subject of which is the aforementioned Property (the `Lease Agreement')." The separate "Lease Agreement" is also referenced in paragraphs 4, 9, and 15 of the Agreement. However, no such "Lease Agreement" is in evidence, and from both parties' testimony, it appears there was no such document. Third, the Agreement states that the "Seller/Landlord will allow Buyer/Tenant the option to record this Option to Purchase Agreement in Public Records." However, Ms. Brooks stated she was not given an original of the Agreement, so she could not record it. Fourth, the Agreement states that no modifications or amendments will be effective unless in writing, but both parties testified that the payment amount and the insurance requirement were verbally modified.
Despite these problems and many other typographical errors, word omissions, and other deficiencies in the Agreement, the parties testified that they intended this contract to reflect their mutual obligations concerning the property at issue. Therefore, in order to resolve the issues raised on appeal, we must determine the nature and effect of the Agreement, if any. The proper interpretation of a contract is a question of law subject to de novo review on appeal. Montz v. Theard, 01-0768 (La.App. 1st Cir.2/27/02), 818 So.2d 181, 185. When considering legal issues, the reviewing court accords no special weight to the trial court, but conducts a de novo review of questions of law and renders judgment on the record. Id.
Ms. Brooks argues that the court erred in failing to recognize that the contract at issue is actually a bond for deed contract, rather than a lease with an option to purchase. A bond for deed is a contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller agrees to deliver title to the buyer after payment of a stipulated sum. See LSA-R.S. 9:2941; Seals v. Sumrall, 03-0873 (La.App. 1st Cir.9/17/04), 887 So.2d 91, 94. An option to sell or buy is a contract whereby a party gives to another the right to accept an offer to sell or buy a thing within a stipulated time. An option must set forth the thing and the price, and must meet the formal requirements of the sale it contemplates. LSA-C.C. art. 2620.
We conclude that the Agreement is not a bond for deed contract. Had it *100 provided that after all of the installments were received, an act of sale conveying title to Ms. Brooks would be passed, the Agreement could be characterized as a bond for deed contract. See LSA-R.S. 9:2941; H.J. Bergeron, Inc. v. Parker, 06-1855 (La.App. 1st Cir.6/8/07), 964 So.2d 1075, 1076. In a true bond for deed contract, upon payment of the stipulated sum, Ms. Brooks would become the owner of the property. See Tabor v. Wolinski, 99-1732 (La.App. 1st Cir.9/22/00), 767 So.2d 972, 974. The Agreement does not meet this definition, and thus, is not a bond for deed contract.[2]
Additionally, because the document was not executed properly under Louisiana law, any provisions concerning an option to purchase this immovable property are null. According to LSA-C.C. art. 2347, the concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovable property. The alienation, encumbrance, or lease of community property by a spouse is relatively null unless the other spouse has renounced the right to concur. LSA-C.C. art. 2353. Furthermore, a transfer of immovable property or an option to purchase or sell immovable property must be made by authentic act or by act under private signature. See LSA-C.C. arts. 1839 and 2620. In this case, the Agreement shows Dave Solet as the "Seller/Landlord," but he did not sign the Agreement. It was signed only by Misty Solet. At the eviction hearing, Misty Solet stated that the house was owned by her and her husband. Since it was community property, both spouses had to sign the Agreement. Additionally, because the Agreement was not executed before a notary public in the presence of two witnesses, it does not constitute an authentic act. See LSA-C.C. art. 1833. And, although it could be considered an act under private signature that was duly acknowledged before the court by Misty Solet as her signature,[3] it could not operate as a transfer or option to transfer immovable community property without Dave Solet's signature.[4] Therefore, the Agreement is not a valid option to purchase or sell the immovable property at issue, and all of the option to purchase provisions, including the $35,500 "non-refundable fee," are unenforceable.
Having concluded that the Agreement is not a valid bond for deed contract or a valid option to purchase contract, we are left with considering whether there is a valid lease between the parties. There is no mention of a lease in the eviction petition. Also, although the Agreement expressly states that the parties "have together executed a prior lease agreement," there is no separate "Lease Agreement" in evidence and, based on the testimony of the parties, none was actually executed. In her testimony, Ms. Solet referred to the Agreement as "the lease," and made no mention of a separate written lease document. *101 However, by its own terms, the Agreement is not the lease between the parties.
As previously noted, LSA-C.C. art. 2347 requires the concurrence of both spouses to lease community property. But a lease agreement is not required to be in writing,[5] and both Mr. and Ms. Solet indicated in open court that they had leased the property to Ms. Brooks. At the hearing, both Ms. Solet and Ms. Brooks testified that the initial rental payment was $1650 per month and that it was verbally modified in October to $1550 per month. They also told the court about their verbal agreement that property insurance payments of $40 per month would be added to the monthly rent. Their testimony did not establish a term for the lease. Therefore, we conclude that although the Agreement was not a written lease, the parties did have a valid verbal residential lease agreement with an indefinite term. See LSA-C.C. arts. 2668, 2671, and 2678. According to LSA-C.C. art. 2680(2), the duration of such a lease is from month to month.
If the lessee fails to pay the rent when due, the lessor may, in accordance with the provisions of the Title "Conventional Obligations or Contracts," dissolve the lease and may regain possession in the manner provided by law. LSA-C.C. art. 2704. The 2004 Revision Comments to this article clarify that this is a two-step process: first, the lessor is entitled to cause a dissolution of the lease, as provided in LSA-C.C. arts. 2013-2024; and second, the lessor is entitled to regain possession of the thing in the manner provided by LSA-C.C.P. arts. 4701-4705 and 4731-4735. Dissolution of the lease is not automatic upon non-payment of rent, unless a written agreement with an express dissolution clause so provides. See LSA-C.C. art. 2017. Since, in this case, there is no written lease agreement in evidence, there is no express dissolution clause providing for dissolution upon non-payment of rent. Therefore, the lessor is required to serve on the lessee a notice to perform within a certain time, with a warning that, unless performance is rendered within that time, the contract shall be deemed dissolved. See LSA-C.C. art. 2015. A lease with an indeterminate term terminates by notice to that effect given to the other party by the party desiring to terminate the lease. See LSA-C.C. art. 2727. In a month-to-month lease, that notice of termination must be given ten calendar days before the end of that month. See LSA-C.C. art. 2728(2). And if the lease concerns immovable property, the termination notice must be in writing. See LSA-C.C. art. 2729.
In this case, the evidence shows that Ms. Brooks failed to make the monthly payments due November 1st and December 1st. The Solets sent her a letter on December 29, 2008, accompanied by a ten-day notice to vacate. Although that letter advised her that she was in default of the lease agreement in excess of 60 days and requested her to vacate the property within ten days, it was not sent ten days before the end of that calendar month, as required for a month-to-month lease of residential immovable property. Therefore, that letter did not suffice to give notice of termination sufficient to terminate or dissolve the lease, and Ms. Brooks' right of occupancy did not cease.
Louisiana Code of Civil Procedure article 4701 states that if the lease had no definite term, the notice required by law for its termination shall be considered as a notice to vacate, entitling the lessor, upon termination of the lessee's right of occupancy, to utilize summary proceedings *102 to obtain possession of the premises. But the Solets did not provide the notice required by law for the termination of this lease, and for that reason, could not proceed via summary proceeding. For this reason, we find merit in Ms. Brooks' third assignment of error, that the court erred in allowing the Solets to use a summary proceeding to regain possession of the property. Therefore, the judgment of eviction must be reversed.

CONCLUSION
Based on the foregoing, we reverse the January 28, 2009 eviction judgment ordering Ms. Brooks to deliver the leased property to the Solets. All costs of this appeal are assessed to the Solets.
REVERSED.
KUHN, J., concurs and assign reasons.
KUHN, J., concurring.
Although I agree with the result I do not believe it is necessary to hold that the agreement is not a bond for deed. Whether the arrangement between the parties is characterized as a bond for deed or an oral residential lease agreement with an indefinite term, the requisite notice was not given. Because notice was not timely, I agree with the reversal of the judgment of eviction and find it unnecessary to characterize the parties' arrangement. The rights of the partieswhether they exist under the written agreement or as a result of an oral arrangementmust be adjudicated in an ordinary proceeding and not in a summary eviction proceeding, which is the specific relief requested in the pleadings, see Carriere v. Bank of Louisiana, 95-3058 (La.12/13/96), 702 So.2d 648, 665. Accordingly, I concur in the result.
NOTES
[1] The record also includes a temporary restraining order signed February 12, 2009, by the Twenty-First Judicial District Court, enjoining the Solets from evicting Ms. Brooks or disposing of the property at issue during the pendency of a lawsuit filed there by Ms. Brooks. Her brief to this court indicates that in that suit, Ms. Brooks seeks specific performance of the Agreement, which she characterizes as a bond for deed contract. This court has no other information concerning the progress of that litigation.
[2] Because we conclude that the contract at issue is not a bond for deed contract, the statutory provisions concerning bond for deed contracts do not apply to the Agreement. Therefore, the forty-five day notice required by LSA-R.S. 9:2945 was not required, and Ms. Brooks' second assignment of error is without merit.
[3] See LSA-C.C. art. 1836.
[4] We note also that enforcement of the purchase option could not have been litigated in the City Court of Denham Springs, because its subject matter jurisdiction is limited to cases where the amount in dispute or the value of the property involved does not exceed fifteen thousand dollars, and it has no jurisdiction in a case involving title to immovable property. See LSA-C.C.P. arts. 4843(A) and 4847. However, the court does have jurisdiction over eviction proceedings, pursuant to LSA-C.C.P. art. 4844.
[5] See LSA-C.C. art. 2681.