JOHNSON, Chief Justice.
| plaintiff, Ashley Hoffman, was insured under an automobile insurance policy issued by defendant, Travelers Indemnity Company of America. Following an automobile accident, Ms. Hoffman obtained medical treatment at Baton Rouge General Medical Center (“BRMC”) and sought reimbursement for the hospital bill under her Travelers’ medical payments coverage. We granted this writ application to determine whether the Travelers’ policy, which provides for payment of medical expenses “incurred,” allows Ms. Hoffman to be reimbursed for the full, non-discounted amount of the hospital bill when the charges were contractually reduced pursuant to the hospital’s agreement with Ms. Hoffman’s health insurer, AETNA Insurance Company. For the following reasons, we answer that question in the negative and reverse the rulings of the lower courts.
FACTS AND PROCEDURAL HISTORY
Ashley Hoffman was injured in an automobile accident and sought medical treatment at BRMC. In conjunction with that treatment, Ms. Hoffman signed a hospital form, which provided, “[i]n consideration of these services rendered to the patient named below, IAve assume responsibility for and guarantee the payment of all | gMedical Center charges in accordance with the Medical Center’s then current rate.” The hospital charges totaled $713.67. However, because Ms. Hoffman was covered by her parent’s AETNA health insurance policy, BRMC reduced the charges to $485.29 pursuant to its contract with AETNA and billed this amount to Ms. Hoffman. Ms. Hoffman paid the $485.29 and BRMC never sought payment for the full $713.67.
Ms. Hoffman subsequently filed a claim with Travelers seeking reimbursement for the total hospital charges of $713.67 under the policy’s medical payments coverage. In reviewing the claim, Travelers obtained an itemized bill from BRMC, but that bill did not reflect the discounted charges. Thus, Travelers issued payment to. Ms. Hoffman in the amount of $674.73, representing the total charges of $713.67 less $38.94 for a geographical deduction relative to one particular treatment. Ms. Hoffman continued to seek payment from Travelers for the full amount of the non-discounted bill. After learning the hospital charges had been contractually reduced, Travelers asserted it had essentially overpaid Ms. Hoffman because she was only entitled to reimbursement of the discounted charges of $485.29.
Thereafter, Ms. Hoffman, individually and on behalf of all other similarly situated, filed a class action suit[1] against Travelers, alleging Travelers failed to comply with its policy by failing to pay the full amount of the bill.[2] Travelers filed a motion for summary judgment, arguing it had complied with the policy because it paid Ms. Hoffman for “expenses incurred?’ Travelers pointed out BRMC reduced the $713.67 in listed charges by $228.37, due to a contractual write-off with AETNA. Thus, Travelers maintained Ms. Hoffman incurred medical expenses of only $485.29, 1¡.which was less than the $674.73 it had paid her. Ms. Hoffman opposed the motion, arguing the Travelers’ policy required *996 payment of the original, non-discounted hospital bill due to her implied liability for the total charges.
The trial court denied Travelers’ motion for summary judgment. Travelers sought supervisory review from this ruling and the court of appeal denied the writ without reasons.[3] Travelers then filed a writ application with this court. We granted the writ with an order remanding the case to the court of appeal for briefing, argument and full opinion.[4]
On remand, the court of appeal denied Travelers’ writ in a split decision, finding no error in the trial court’s denial of Travelers’ motion for summary judgment.[5] The court stated the issue:
[Wjhether “expenses incurred,” as stated in the medical payment provision of plaintiffs automobile liability policy, means the full amount of the medical expenses charged by a treating hospital in connection with plaintiffs automobile accident, or the reduced amount of medical expenses accepted by the hospital due to a contractual agreement with plaintiffs health insurer.[6]
The court concluded “that ‘expenses incurred’ constitutes the full amount of medical expenses charged by the treating hospital and that the trial court properly denied the automobile insurer’s motion for summary judgment.”[7] In so ruling, the court relied on the holdings of Thomas v. Universal Life Ins. Co.[8] and Niles v. American Bankers \4Ins. Co,[9] reasoning that BRMC charged Ms. Hoffman for the services it provided and was entitled to be paid for those charges. “The fact that the charges could ultimately be reduced by virtue of a negotiated rate agreement between the treating hospital and plaintiffs medical insurer is of no moment in determining the amount which Travelers is legally and contractually obligated to pay.”[10] The court further explained:
[T]his was not a gratuitous reduction by the treating hospital; rather, premiums were paid by or on behalf of Ms. Hoffman for health insurance to obtain this benefit. Thus, Travelers is not entitled to a windfall based on premiums paid to her health insurer, as there is no evidence that plaintiffs premiums paid to Travelers were reduced on account of her having a separate policy. Absent Ms. Hoffman’s decision to collaterally obtain health insurance, she would be responsible for the full sum invoiced, as the “expenses incurred” by her for the hospital charges. Moreover, if Ms. Hoffman’s health insurer had failed or refused to pay the hospital charges, she remained responsible for the charges as she signed a treatment authorization form upon being admitted to the hospital which included a contractual obligation that she “assume[s] responsibility for and guarantee[s] the payment of all Medical Center charges in accordance [with] the Medical Center’s then current rate.” There is no basis in fact or law to allow Travelers to obtain a windfall for *997 Ms. Hoffman’s separately paid health insurance [footnote omitted].[11]
Judge Higginbotham concurred, finding “the majority opinion unnecessarily discusses the meaning of the term ‘expenses incurred’ as used in the Travelers’ policy, because the meaning of the term is subject to interpretation of the parties’ intent, and is therefore, inappropriate for summary judgment.”[12] Judge McClendon dissented, finding Travelers paid the expenses “incurred” by Ms. Hoffman in accordance with the terms of its medical payments provision because Ms. Hoffman was only billed for and legally obligated to pay the reduced amount of $485.29.[13]
| ^Travelers filed the instant writ application with this court, which we granted.[14]
DISCUSSION
This court applies a de novo standard of review in considering the lower courts’ rulings on parties’ summary judgment motions.[15] Thus, we use the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate.[16] A court must grant a motion for summary judgment “[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.”[17]
The Travelers’ policy contains an endorsement to the “Medical Payments Coverage C” and provides that Travelers will pay reasonable “expenses incurred” for necessary medical services in certain circumstances:
Amendment of Policy Provisions — Louisiana
[[Image here]]
III. Medical Payments The Medical Payments Section is amended as follows:
A. Paragraph A of the Insuring Agreement is replaced by the following:
A. We will pay reasonable expenses incurred for necessary medical and funeral services because of “bodily injury”:
1. Caused by accident; and
2. Sustained by an “insured”.
[[Image here]]
The issue presented involves the proper interpretation of the word “incurred” as it is |fiused in the Travelers’ policy. Specifically, we must determine whether Ms. Hoffman “incurred” expenses for the full value of the medical treatment at BRMC when the hospital charged and accepted a contractually discounted amount as full payment.
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts.[18] Whether contract language is clear or ambiguous is a ques *998 tion of law.[19] The words of a contract are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.[20] When a contract’s language is clear and explicit and leads to no absurd consequences, no further interpretation may be made in search of the parties’ intent.[21] If the wording of the policy is unambiguous, then the contract must be enforced as written.[22] This court has never directly addressed the meaning of “incurred” expenses as that term is used in the Travelers’ policy. After considering the record, law, briefs and arguments of the parties, we now find the term “incurred” in the medical payments provision of the Travelers’ policy unambiguous, and conclude that an expense is “incurred” when one has paid it or become legally obligated to pay it.
The definition of “incur” encompasses the concept of “liability.” “Incur” is generally defined as “to suffer or bring on oneself (a liability or expense);”[23] to “become liable or subject to.”[24] Likewise, “liability” is defined as “the quality or state of being legally obligated or accountable; legal responsibility to another or to society, ^enforceable by civil remedy or criminal punishment. A financial or pecuniary obligation; debt.”[25] Commentators have noted that medical payments provisions requiring an insured to “incur” medical expenses “contemplates a liability thrust upon the insured by act or operation of law. Stated otherwise, expenses are incurred within medical payments coverage only when one has become obligated to pay for them.”[26]
Relevant jurisprudence from our appellate courts also focuses on the concept of liability to determine whether an expense is incurred. In Drearr v. Connecticut General Life Insurance Co.,[27] the plaintiff, a veteran, received medical treatment at a Veterans Administration (“VA”) Hospital for treatment and surgery due to an ulcer. He brought suit seeking reimbursement from his hospitalization insurer for $1,038.50, the amount of a bill rendered by the VA. No effort was made by the VA to collect the bill and the VA had no intention to pursue plaintiff for any indebtedness. Plaintiff contended that the insurer had contracted to pay him “for the expense incurred for (a) for hospital charges for bed and board and (b) for hospital charges for necessary services and supplies.” The insurer asserted that as a qualified veteran, plaintiff was entitled to free treatment at the hospital and incurred no expense in connection with any of the services rendered. The court concluded that the plaintiff did not incur any expenses and thus had no right to recover under the certificate of insurance issued by the insurer.[28] The court cited to federal jurisprudence *999 involving a nearly identical situation wherein the federal court stated:
[T]he court is impressed with the unreality of the position that [the insured] has incurred any expense whose payment by him to plaintiff | Swas ever demanded, insisted upon or even expected by plaintiff. The claim of any debt on his part for the expense is a sham or pretense. It lacks that quality of “actuality” which, the policy declares, must characterize the “incurred expense” to support recovery by [plaintiff] from defendant.[29]
Adopting this reasoning, the court concluded that because the VA did not have authority to collect for expenses from the plaintiff, “it could not be said that the plaintiff herein incurred any expense for the services of which he was the recipient.” [30]
Similarly, in Irby v. Gov’t Employees Ins. Co.,[31] the plaintiff was injured in an automobile accident while on active duty with the United States Coast Guard and received medical treatment at a United States Public Health Service Hospital. Plaintiff was never charged for the medical services because of his status as a member of the Coast Guard and was under no obligation to pay for those services. Plaintiff sought to recover the $812.00 value of his medical services under the medical payments provision of his insurance policy. The policy’s medical payments provision provided that the insurer was required to pay “all reasonable expenses incurred” for necessary medical services. The insurer argued the policy only provided reimbursement of “incurred” medical expenses and the plaintiff never “incurred” any such expenses. The court of appeal agreed and dismissed the plaintiffs suit. The court explained:
[A]s used in the policy in suit, the word “incurred” emphasizes the idea of liability and the definition of “incur” is: “To have liabilities (or a liability) thrust upon one by act or operation of law”; a thing for which there exists no obligation to pay, either express or implied, cannot in law constitute an “incurred expense”; a debt or expense has been incurred only when liability attaches.[32]
In interpreting the contract of insurance between the parties, the court concluded that 19“as the policy requires payment by the defendant only of ‘incurred’ expenses and as plaintiff never was under any obligation to pay the medical and hospital expenses and therefore never ‘incurred’ the same, the defendant cannot be forced to pay under its contract.”[33]
Likewise, in Brackens v. Allstate Insurance Company,[34] the plaintiff was injured in an automobile accident and was treated at a VA hospital. As a qualified veteran, plaintiff was entitled to receive hospital services without payment and no charge was made to the plaintiff for the services. Plaintiff filed suit against his insurer seeking recovery under the medical payments coverage of his policy. The policy provided that “Allstate will pay all reasonable expenses, incurred within one year from the date of accident, for necessary medical ... services ... to or for an insured who sustains bodily injury caused by accident.” The insurer contended plaintiff never incurred or became liable for any medical expenses and was not entitled to recovery *1000 under the policy provisions. The court agreed, relying on Irby.[35] The court concluded that “plaintiff has never been liable or obligated for payment of the medical services rendered by the VA Hospital.... He has never, therefore, ‘incurred’ any medical expense for which payment is due under the medical payments provisions of the insurance contract.”[36]
We find the analysis and holdings of these cases applicable here. In this case, there is no dispute that BRMC contracted with Ms. Hoffman’s health insurer, AET-NA, which entitled Ms. Hoffman to pay a discounted price for medical services. It is undisputed that BRMC charged Ms. Hoffman a discounted amount of $485.29 hnin full payment of her medical services. It is further undisputed that Ms. Hoffman paid $485.29 in full payment of her bill from BRMC, and BRMC did not seek payment for the full $713.67. The parties are in agreement that BRMC has no contractual right to recover any amount over the discounted bill. Thus, because BRMC contractually pre-negotiated rates with AETNA, Ms. Hoffman was only legally obligated to pay $485.29. And, because Ms. Hoffman bears no liability for any amount over the $485.29 she paid to BRMC, she did not incur the full medical expense of $713.67.
In finding Ms. Hoffman incurred the full amount of the hospital charges, the court of appeal erred by relying on Thomas and Niles, supra. In Thomas, the plaintiff was injured on the job and received medical treatment paid by his employer’s worker’s compensation insurer. Plaintiff sought benefits under a Hospital and Surgical Expense Policy issued by Universal Life Insurance Company.[37] The insurer argued it was only required to pay “expenses actually incurred” under the policy and because all of the plaintiffs expenses were paid by the worker’s compensation insurer, the plaintiff had not actually incurred any such expense. The court disagreed and found the plaintiff incurred the medical expenses, relying on statements showing the charges for the hospital expenses and doctor’s services were billed to the plaintiff. The court held plaintiff was legally liable for these expenses.[38]
In Niles, the plaintiff was hospitalized for surgical removal of a cataract, and all of her hospital expenses, other than the deductible, were paid by Medicare.[39] Plaintiff sought to recover benefits under her hospitalization insurance policy which hiprovided reimbursement “for the hospital expense actually incurred.”[40] The court found the hospital expenses were actually incurred by the plaintiff, reasoning the charges were made to the plaintiffs account and if plaintiff had not had coverage under Medicare, then the hospital could have required payment of the entire account from her.[41]
Thus, in both Thomas and Niles, the plaintiffs were found to have incurred the expenses because the charges were billed to the plaintiffs, and plaintiffs were legally responsible for those charges. Plaintiffs’ failure to pay the charges was not due to a lack of legal responsibility, but, rather, because a third party paid the expenses on their behalf. By contrast, Ms. Hoffman was charged and billed for *1001 $485.29 and- she personally paid that amount. We find the rationale underlying the holdings of Thomas and Niles more akin to cases involving the collateral source rule.[42] Viewed in this light, Thomas and Niles do not address the question of whether Ms. Hoffman can recover more in expenses than BRMC charged and accepted from her as full payment, and their rulings are inapposite here.
Additionally, the reliance on the signed hospital form by both the court of appeal and Ms. Hoffman is misplaced. While Ms. Hoffman agreed to be responsible for the hospital’s charges, she has never become liable for any amount above the discounted charges of $485.29. Although the form provided that Ms. Hoffman is responsible for payment of charges at the hospital’s “then current rate,” the “then | ^current rate” applicable to Ms. Hoffman can only be the discounted rate pursuant to BRMC’s contract with AETNA. BRMC pre-negotiat-ed rates with AETNA and contractually agreed to accept this reduced rate for treatment of AETNA’S insureds. In denying Travelers’ writ application, the court of appeal erroneously opined that if AETNA had failed or refused to pay the hospital-charges, Ms. Hoffman remained responsible for the full charges as she signed a treatment authorization form. However, it is undisputed that AETNA paid nothing on behalf of Ms. Hoffman and because she was an AETNA insured, Ms. Hoffman was still only charged the reduced rate of $485.29. Thus, Ms. Hoffman’s signature on the form did not increase the amount of her liability.
CONCLUSION
We conclude that the medical expense Ms. Hoffman “incurred” was the amount BRMC charged and accepted as full payment for its services rendered to her,. $485.29. Ms. Hoffman has not paid, nor is she legally obligated to pay, the amount discounted by BRMC pursuant to its agreement with AETNA. Because we find Travelers paid the expenses incurred by Ms. Hoffman in accordance with the terms of its policy, we find Travelers has fully performed under the insurance contract and is entitled to summary judgment.
DECREE
Accordingly, for the foregoing reasons the judgments of the lower courts are reversed. Travelers’ motion for summary judgment is hereby granted. REVERSED AND RENDERED.

. Although Ms. Hoffman filed this petition as a class action, no motion for certification has been filed in this case. Thus, our ruling relates only to Ms. Hoffman’s individual suit against Travelers.

. Ms. Hoffman also alleged in the petition ■ that Travelers’ systematic geographic reductions violated the policy. However, that issue is not directly before us for review.

. Hoffman v. Travelers Indemnity Co. of America, 12-725 (La.App. 1 Cir. 9/19/12) (unpublished).

. Hoffman v. Travelers Indemnity Co. of America, 12-2271 (La. 12/14/12); 104 So.3d 451.

. Hoffman v. Travelers Indemnity Co. of America, 12-725 (La.App. 1 Cir. 6/7/13); 121 So.3d 106.

.Id.

. Id. at 107.

. 201 So.2d 529 (La.App. 3rd Cir. 1967).

. 229 So.2d 435 (La.App. 3rd Cir. 1969), writ refused, 255 La. 479, 231 So.2d 394 (1970).

. Hoffman, 121 So.3d at 110.

. Id.

. Id. at 112.

. Id. at 112-13.

. Hoffman v. Travelers Indemnity Co. of America, 13-1575 (La. 11/8/13), 129 So.3d 522.

. Property Insurance Association of Louisiana v. Theriot, 09-1152 (La.3/16/10), 31 So.3d 1012, 1014.

. Greemon v. City of Bossier City, 10-2828 (La.7/1/11), 65 So.3d 1263, 1267.

. La. C.C.P. art. 966(B).

. Hill v. Shelter Mut. Ins. Co., 05-1783 (La.7/10/06), 935 So.2d 691, 693.

. Louisiana Ins. Guar. Ass’n v. Interstate Fire & Cos. Co., 630 So.2d 759, 764 (La.1994).

. Reynolds v. Select Properties, Ltd., 634 So.2d 1180, 1183 (La.1994).

. Peterson v. Schimek, 98-1712 (La.3/2/99), 729 So.2d 1024, 1028.

. Edwards v. Daugherty, 03-2103 (La. 10/1/04), 883 So.2d 932, 941.

. Black's Law Dictionary 836 (9th ed. 2009).

. Webster’s Third New International Dictionary 1146 (2002).

. Black's Law Dictionary, supra n. 23, at 997; see also Webster's New World Dictionary, supra n. 24, at 1302.

. Lee R. Russ & Thomas F. Segalla, 11 Couch on Insurance 3d, § 158.10 (2005).

. 119 So.2d 149 (La.App. 4th Cir. 1960).

. Id. at 153.

. Id. at 152 (internal citations removed).

. Id. at 153.

. 175 So.2d 9 (La.App. 4th Cir.1965).

. Id. at 10 (internal citations removed).

. Id. at 11.

. 339 So.2d 486 (La.App. 2nd Cir.1976).

. Id. at 487.

. Id. at 488.

. Thomas, 201 So.2d at 531.

. Id. at 532.

. Niles, 229 So.2d at 436.

. Id. at 437.

.Id. at 438-39.

. As explained by this court in Louisiana Dept, of Transp. & Dev. v. Kansas City Southern Railway Co., 02-2349 (La.5/20/03), 846 So.2d 734, 739: "Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tort-feasor’s procuration or contribution. Under this well-established doctrine, the payments received from the independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer.”