STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 0062

JOANN HARP AND GARY HARP

VERSUS

SUCCESSION OF BOBBY E. BRYAN AND JUANITA S. BRYAN

*consolidated with*

2019 CA 0063

CARYL WADE AND TOMMY WADE

VERSUS

SUCCESSION OF BOBBY E. BRYAN AND JUANITA S. BRYAN

*consolidated with*

2019 CA 0064

LINDA LEWIS AND HILLARY LEWIS

VERSUS

SUCCESSION OF BOBBY E. BRYAN AND JUANITA S. BRYAN

Judgment Rendered: **SEP 0 3 2020**

\* \* \* \* \* \*

Appealed from the
Seventeenth Judicial District Court
Parish of Lafourche, State of Louisiana
Docket No. 124637 c/w 124737 c/w 124738

The Honorable Walter I. Lanier, III, Judge Presiding
\* \* \* \* \* \*

| | |
|---|---|
| Mark D. Plaisance<br>Marcus J. Plaisance<br>Prairieville, Louisiana | Counsel for Plaintiffs/Appellants<br>Joann Harp, Gary Harp, Caryl Wade,<br>Tommy Wade, Linda Lewis, and<br>Hillary Lewis |
| George J. Ledet, Jr.<br>Cut Off, Louisiana | Counsel for Defendants/Appellees<br>Succession of Bobby E. Bryan and<br>Juanita S. Bryan |

\* \* \* \* \* \*

BEFORE: WHIPPLE, C.J., GUIDRY, McDONALD,
HOLDRIDGE, AND BURRIS,[1] JJ.

---

[1]  The Honorable William J. Burris, retired, is serving *pro tempore* by special appointment
of the Louisiana Supreme Court.

Whipple, C.J. Concurs and assigns reasons.

Guidry, J. Dissents and assigns reasons.

McDonald, J. Concurs

**BURRIS, J.**

The plaintiffs in these consolidated cases appeal the trial court's judgment that dismissed their claims for damages and enforcement of contracts for the transfer of immovable property. We reverse and remand.

## FACTS

During their marriage, Bobby and Juanita Bryan purchased immovable property along Bayou Lafourche, in Leeville, Louisiana. In addition to living on the property, they installed a bulkhead and operated Marsh Masters RV park and a marina, from which Bobby operated a guide services business. Marsh Masters RV Park was never incorporated. Rather, Bobby and Juanita ran the business together as "a mom and pop operation," with Juanita handling the finances. Bobby and Juanita operated the business from their community owned immovable property.

JoAnn and Gary Harp, Caryl and Tommy Wade, and Linda and Hillary Lewis (collectively referred to as "the plaintiffs") were friends of the Bryans and rented trailer spots in the RV park. Gary and Tommy also operated their own fishing guide business from the property, paying Bobby $100.00 of the fee they earned for each guided trip, and encouraged their clients to stay at the RV park. Additionally, they assisted Bobby with his guide business. The Wades met the Bryans after renting space at the RV park. The plaintiffs claim Bobby approached them with offers to purchase contiguous waterfront lots in the RV park. Bobby provided contracts, entitled "Lease/Purchase of Immovable Property," which he and the plaintiffs signed. Juanita was present when the contracts were signed but did not sign them herself, except as a witness to the Lewises' contract.

Each contract contained a detailed description of the respective immovable property and generally provided a ten-year lease term (March 2, 2004 through March 2, 2014), with a monthly rate of $250.00. The contracts further provided that in consideration for an advance lump sum lease payment of $35,000.00 in the case of

2

the Harps and the Lewises and $30,000.00 in the case of the Wades, "fee simple title" would be transferred to the respective plaintiffs within twenty days of the lease term's expiration or the payoff of any mortgages on the property. Other terms of the contracts included that the plaintiffs were entitled to utilize the RV park's sewerage and water utilities at no charge; that the plaintiffs were responsible for electricity and any temporary or permanent improvements on the premises; that upon termination and transfer of titles, the plaintiffs would begin paying $400.00 annually for general upkeep; and that the plaintiffs would be allowed a permanent right of ingress and egress to and from the respective properties, which would be transferred to the plaintiffs with the transfer of title in the nature of a predial servitude.

The Harps and Bobby signed the contract at a restaurant, with Juanita present. The Harps gave Juanita a $35,000.00 cashier's check and believed that they paid for the property up front, but that the Bryans had up to ten years to pay off the mortgage and provide them with the title. After checking with the Bryans, the Harps built a camp at the edge of the property that extended out over the adjacent water and installed boat lifts. Pursuant to a verbal agreement, Bobby paid for the pile driving work. Utilities for the camp were provided through the RV park. The Harps made annual payments to the RV park of $400.00 for water and sewerage and made additional payments for electricity usage.

The Lewises signed their contract at the Bryans' home. Juanita was present and signed as a witness. The Lewises gave Bobby a $35,000.00 check, who passed it to Juanita. Like the Harps, the Lewises believed they were paying for the property up front and that they would become owners. They then spent approximately $85,000.00 building a camp on the property, which extended over the waterway and was equipped with boat lifts and an elevator. The Lewises also paid $400.00 annually for water and sewerage and paid for electricity usage.

3

Mr. Wade recalled signing the contract at the Bryans' home. The Wades provided a $30,000.00 check, believing they would be given clear title to the land. With the assistance of the Bryans' son, the Wades then built a deck with boat slips and lifts. The Wades lived out of state and visited in their camper, which they parked on the property. The Wades made payments of $400.00 annually for water and sewerage and paid for electricity usage.

Bobby died prior to expiration of the contracts' ten-year terms and without providing titles to the plaintiffs. In late 2013, Juanita sent letters to the plaintiffs informing them that when the ten-year terms expired, they would be required to pay $750.00 monthly for rent and $1,500.00 annually for water and sewerage. Believing Juanita was not going to honor the contracts and transfer the titles, the plaintiffs filed these suits against Juanita and Bobby's succession (collectively, "the defendants"), seeking specific performance of the contracts and damages.

The defendants answered the petitions, denying the plaintiffs' allegation that the parties signed the contract. The defendants admitted that Bobby signed the contracts, but denied that Juanita did so. The defendants further asserted that the plaintiffs' camps were not constructed on the properties described in the contracts but were built above structures owned by the defendants over navigable waters. The defendants averred the contracts were bond for deed contracts attained in contravention of law, rendering them invalid, and that specific performance was impossible. The defendants further asserted reconventional demands against the plaintiffs, claiming the plaintiffs continued to occupy the defendants' property without payment and were therefore liable for loss of rental revenues and expenses. The plaintiffs answered, generally denying the claims asserted in the reconventional demand and asserting affirmative defenses.

The Harps amended their petition to allege that prior to entering the contracts, Bobby consulted with an attorney, who advised him the transaction would be

4

unlawful and unenforceable. The Harps contended Bobby then acted in bad faith in preparing the contracts and presenting them for signature. Alternative to their other causes of action, they alleged they were entitled to all damages pursuant to Louisiana Civil Code article 1997, which provides, "An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." The defendants answered and contended that the attorney was a customer who knew all of the parties and informed them of problems with the legality and enforceability of the contracts, and further denied having any particular knowledge of the contracts that the plaintiffs lacked.

A bench trial was held on February 1, 2018.[2] The plaintiffs testified about their understanding of the contracts and Juanita's actions before and after Bobby's death. They also described the structures they built on the respective properties. Juanita testified that Bobby told her about the agreements and that she "wasn't for it" because she did not want to transfer the property. She admitted she knew about the camps constructed by the plaintiffs, but did not question the construction because Bobby told her "he was letting them have that property to build over the water, not the property, over the water because there was – it would take up part of our trailer deal." She indicated that any transfer would probably only have been of approximately fifteen feet of property from the bulkhead, and then only if the debts secured by the mortgages were paid. Juanita stated the property was still encumbered by multiple mortgages, two of which were granted after the contracts were signed. She described the contracts as "strictly an agreement" for a ten-year term. She testified that she increased the rental amount to follow the ten-year term, because she continued to pay taxes and insurance premiums and her expenses had increased.

---

[2]     Prior to trial, the trial court denied cross-motions for summary judgment and ordered the parties to participate in mediation.

The trial court took the matter under advisement, then issued written reasons for judgment, stating it found the contracts to be invalid and unenforceable. Instead, the trial court found the parties entered into verbal lease agreements that were modified in 2013, when Juanita notified the plaintiffs of the changed amounts by letter. The trial court determined the plaintiffs' improvements on the property were not subject to the verbal leases and that the plaintiffs retained full ownership of the improvements, although their right to travel across the defendants' property and receive utility services through the defendants had ceased. The trial court rendered judgment, purporting to be in favor of the defendants, that dismissed all claims and ordered each party to bear its own costs. The plaintiffs now appeal.

## JURISDICTION

A threshold inquiry in any case is whether there is a basis for jurisdiction. Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties and to grant the relief to which they are entitled. La. Code Civ. Pro. art. 1. We have a duty to examine subject matter jurisdiction *sua sponte,* even when the litigants do not raise the issue.[3] *Advanced Leveling & Concrete Solutions v. Lathan Company, Inc.,* 17-1250 (La. App. 1 Cir. 12/20/18), 268 So. 3d 1044, 1046 *(en banc).*

This court's appellate jurisdiction extends to final judgments. *See* La. Code Civ. Pro. art. 2083A. A final judgment determines the merits of an action, in whole or in part. La. Code Civ. Pro. art. 1841. In contrast, an interlocutory judgment does not determine the merits, but decides only preliminary matters in the course of an action. La. Code Civ. Pro. art. 1841. An interlocutory judgment is appealable only when expressly provided by law. La. Code Civ. Pro. art. 2083C.

---

[3] The jurisdiction issue was raised during oral arguments before this court and the parties were afforded the opportunity to address it in supplemental briefs.

6

A valid judgment must be "precise, definite, and certain." Moreover, a final appealable judgment must contain decretal language and name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. These determinations should be evident from the language of the judgment without reference to other documents in the record. The specific nature and amount of damages should be determinable from a judgment so that a third person is able to determine from a judgment the amount owed without reference to other documents. *Advanced Leveling & Concrete Solutions*, 268 So. 3d at 1046.

The trial court's judgment provides:

> IT IS ORDERED, ADJUDGED AND DECREED that the Court grants a judgment in favor of the defendants, Succession of Bobby E. Bryan and Juanita Bryan and against the plaintiff[s], Joann and Gary Harp, Caryl S. and Tommy Wade and Linda R. And Hillary A. Lewis dismissing all claims and order[s] that each party will bear its own costs[.]

The judgment was issued after a trial on the merits. There is no indication that any issues remained outstanding. Although the judgment does not specifically address the reconventional demand, the judgment dismisses "all claims." This language is sufficiently specific to encompass dismissal of the claims asserted in the reconventional demand. Furthermore, silence in a judgment as to any issue that was placed before the trial court is deemed a rejection of the claim. *Roper v. City of Baton Rouge/Parish of East Baton Rouge*, 16-1025, 16-1026, 16-1027, 16-1028, 16-1029, 16-1030 (La. App. 1 Cir. 3/15/18), 244 So. 3d 450, 470 n.9, *writ denied*, 18-0854 (La. 9/28/18), 252 So. 3d 926; *see also Williams v. Richardson*, 16-1430 (La. App. 1 Cir. 11/1/17), 2017WL4946749, *1 n.1, *writ denied*, 17-1995 (La. 2/9/18), 236 So. 3d 1261 (deeming silence in the trial court's judgment on an issue raised in a defendant's reconventional demand as a rejection of that demand).

7

We note that the judgment additionally states that it was rendered in favor of the defendants. Although the dismissal of the plaintiffs' claims is a judgment in favor of the defendants, the judgment does not affirmatively grant the defendants any relief. Nonetheless, this referenced language does not form part of the decretal language as the judgment ultimately dismisses all claims. The Louisiana Supreme Court has held that an otherwise complete and valid judgment is not invalid merely because it contains surplus language. *See Hinchman v. Int'l Brotherhood of Elec. Workers, Local Union No. 130*, 292 So. 2d 717, 719 (La. 1974); *John M. Floyd & Associates, Inc. v. Ascension Credit Union*, 19-0574 (La. App. 1 Cir. 12/27/19), 292 So. 3d 922, 924. Thus, we find this language has no bearing on the validity of the judgment.

The judgment constitutes a valid final judgment and this court has appellate jurisdiction to consider the merits of this appeal.

## DISCUSSION

The plaintiffs argue the trial court erred in finding the contracts invalid and unenforceable. They contend that Juanita's actions reflect her concurrence with the contracts and that her signature was not required. The defendants counter that the plaintiffs failed to meet their burden of proof at trial.

To resolve the issues raised on appeal, we first consider the nature and effect of the contracts, if any. *See Giroir v. Thomas*, 17-1021 (La. App. 1 Cir. 3/29/18), 2018 WL 1556193, *2. A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. La. Civ. Code art. 1906. Contracts may be either nominate or innominate. Nominate contracts are those given a special designation, such as sale, lease, loan, or insurance; innominate contracts are those with no special designation. La. Civ. Code art. 1914. The proper interpretation of a contract is a question of law. When considering legal issues, the

8

reviewing court accords no special weight to the trial court, but conducts a *de novo* review and renders judgment on the record. *Giroir*, 2018WL1556193 at *2.

Contracts have the effect of law between the parties and the courts are to interpret them according to the common intent of the parties. *See* La. Civ. Code arts. 1983, 2045. If the words of the contract are clear, unambiguous, and lead to no absurd consequences, the court need not look beyond the contract language to determine the parties' true intent. *See* La. Civ. Code art. 2046. Whether a contract is ambiguous is a question of law. *Hoffman v. Travelers Indem. Co. of America,* 13-1575 (La. 5/7/14), 144 So. 3d 993, 997-98.

The subject contracts are entitled "Lease/Purchase of Immovable Property," which the plaintiffs characterize as bond for deed contracts. A bond for deed is a contract through which the immovable property owner agrees to deliver title to the property to a purchaser after the purchaser has paid a specified purchase price in the form of installment payments. *See* La. R.S. 9:2941; *Keen v. Webeland, Inc.,* 19-0708 (La. App. 1 Cir. 2/21/20), 2020WL862500, *1 n.2. The contracts resemble bond for deed contracts because they specified title would not be immediately delivered. However, bond for deed contracts must meet certain statutory requirements, including the designation of a bank to serve as escrow agent to receive payments from the purchaser and any mortgage holder's guarantee to the purchaser that it will release the mortgage when paid in full. *See* La. R.S. 9:2942 and 2943; *Giroir*, 2018WL1556193 at *2. The subject contracts do not contain such provisions and thus do not meet the statutory requirements of bond for deed contracts.

A contract may be treated as a bond for deed despite its failure to comply with certain particulars of the bond for deed statutes, especially where the party for whom the omitted provisions are designed does not protest their absence. *Giroir*, 2018WL1556193 at *2. The label put on the transaction is not determinative; rather, it is the nature of the obligations created, rather than the parties' characterization,

9

which governs the classification of a contract. *Giroir*, 2018WL1556193 at *2; *see also Montz v. Theard*, 01-0768 (La. App. 1 Cir. 2/27/02), 818 So. 2d 181, 187. Moreover, the contracts may be valid innominate contracts even if not classified as bond for deeds. *Giroir*, 2018WL1556193 at *2. The subject contracts obligated the defendants to transfer ownership of immovable property upon either satisfaction of the mortgages or the passage of ten years. Thus, they may constitute contracts to sell. *See* La. Civ. Code art. 2623. Whether classified as an innominate contract or a contract to sell, the contracts are subject to the form requirements of a sale of immovable property. *See* La. Civ. Code art. 2623.

A transfer of immovable property or a contract to sell immovable property must be in the form of an authentic act or act under private signature, or meet the requirements for an oral transfer.[4] *See* La. Civ. Code arts. 1839 and 2623. The subject contracts were not notarized and there is no dispute that the contracts are not in the form of authentic acts. *See* La. Civ. Code art. 1833 (providing that an authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed). However, an act that fails to be an authentic act due to a defect of form may still be valid as an act under private signature. La. Civ. Code art. 1834.

An act under private signature is one executed by the parties themselves without the intervention of a public officer such as a notary public. *Rainey v. Entergy Gulf States, Inc.*, 09-572 (La. 3/16/10), 35 So. 3d 215, 225 (*citing* 5 Saul Litvinoff, Louisiana Civil Law Treatise – The Law of Obligations, §12.26 (2d ed. 2001)). An act under private signature need not be written by the parties, but must be signed by them. La. Civ. Code art. 1837. A jurisprudential exception to this statutory

---

[4]    An oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath. La. Civ. Code art. 1839.

10

requirement exists when only one party has signed an agreement and the other party has availed himself of the agreement or taken actions evidencing his acceptance thereof. *See* La. Civ. Code art. 1837 - 1984 Revision Comment (b); *Stevens Constr. & Design, LLC v. Hillman*, 19-1329 (La. App. 1 Cir. 6/12/20), 2020WL3109444, *3. A party against whom an act under private signature is asserted must acknowledge his signature or deny that it is his. In the case of denial, any means of proof may be used to establish that the signature belongs to that party. La. Civ. Code art. 1838. A signature can be proven in open court, in the same manner as any other material and relevant circumstance. *See Louisiana State Mineral Bd. v. Abadie*, 164 So. 2d 159, 174 (La. App. 1 Cir. 1964).

The defendants admitted in their answer that Bobby signed the contracts. This judicial admission establishes that the contracts were, in fact, acts under private signature. However, the trial court found the contracts were invalid, noting they purported to alienate immovable community property and were signed only by Bobby.

Each spouse, acting alone, may manage, control, or dispose of community property unless otherwise provided by law. La. Civ. Code art. 2346. Under Louisiana Civil Code article 2347, the concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovables. When the concurrence of the spouses is required by law, the alienation, encumbrance, or lease of community property by a spouse is relatively null unless the other spouse has renounced the right to concur. La. Civ. Code art. 2353. A contract that is only relatively null may be confirmed, either tacitly or expressly. La. Civ. Code arts. 1842 and 2031.

The contracts at issue were not signed by Juanita as seller and do not reflect her concurrence. *See Solet v. Brooks*, 09-0568 (La. App. 1 Cir. 12/16/09), 30 So. 3d 96, 100; *see also South Central Bell Telephone Co. v. Eisman*, 430 So. 2d 256, 258-

11

59 (La. App. 5 Cir.), *writ denied*, 437 So. 2d 1154 (La. 1983). There was no evidence presented that Juanita renounced the right to concur. Consequently, the contracts were relatively null and subject to confirmation. *See* La. Civ. Code art. 2031.

Rather than finding the contracts to be *relatively null*, the trial court found the contracts to be *invalid and unenforceable*. The trial court stated it was following *Solet v. Brooks*, in which this court found that a contract signed by only one of the spouses could not operate to transfer or as an option to sell immovable property. *See Solet*, 30 So. 3d at 100. However, this court's analysis in *Solet* was specific to the issues raised in that appeal. Notably, those issues did not include renunciation, concurrence, or ratification of the contract by the non-signing spouse. Under the particular facts presented in that case, the contract signed by only one spouse was invalid. Although stated in broad terms, the holding in *Solet* is limited to its facts and does not apply to render relatively null contracts absolutely null in contravention of the Civil Code. The trial court committed legal error to the extent it relied on *Solet* to find the subject contracts to be invalid and unenforceable, rather than relative nullities.

When the appellate court finds a reversible legal error or manifest error of material fact, it is required, if it can, to review the record *de novo* and render a judgment on the merits. *See Arias v. Stolthaven New Orleans, L.L.C.*, 08-1111 (La. 5/5/09), 9 So. 3d 815, 818; *St. James Behavioral Health Hosp., Inc. v. Gopalam*, 16-0170 (La. App. 1 Cir. 7/28/16), 199 So. 3d 639, 644-45, *writ denied*, 16-1696 (La. 1/9/17), 214 So. 3d 864. Therefore, we consider the evidence presented to determine if Juanita's actions constituted confirmation sufficient to cure the relatively null contracts.

Confirmation of a contract involves making the contract valid by formal assent. *Zeller v. Webre*, 09-45 (La. App. 5 Cir. 5/26/09), 17 So. 3d 55, 58. One court has explained:

12

That assent can be evidenced through the typical actions signifying ratification of a defective contract. ... While no clear definition exists in the statutes or case law as to what confirmation acts validate a relatively null contract, jurisprudence makes it clear that acts sufficient to ratify a contract will act as confirmation of the contract. Confirmation and ratification are used almost interchangeably, or as non-exclusive actions. When a contract is ratified through the subsequent actions of the parties, that contract is confirmed by that ratification.

*Rowan v. Town of Arnaudville*, 02-0882 (La. App. 3 Cir. 12/11/02), 832 So. 2d 1185, 1190; *see also Meaghan Frances Hardcastle Tr. v. Fleur De Paris, Ltd.*, 04-1371 (La. App. 4 Cir. 6/29/05), 917 So. 2d 448, 451 (*quoting Rowan*, 832 So. 2d at 1190). Whether the actions of the spouse who did not sign amount to confirmation is a fact-specific inquiry. *Cf. Thomassee v. Thomassee,* 15-0127 (La. App. 1 Cir. 9/21/15), 2015 WL 5547483, **3-4; *Zeller*, 17 So. 3d at 59-60.

In this case, Juanita was physically present when each contract was signed. Juanita admitted that she knew of the contracts and signed one of them as a witness. She testified that she told Bobby she "wasn't for it," but did not return the money because "it was up to him. He was the leader of my family. And what he wanted to do is what got done at the time." When asked if Bobby told her that he would sell the property whether she liked it or not, she responded "[m]ore or less, yes." She equivocated as to whether she thought the contracts were sales, agreeing she knew there was a transfer of property, but later explaining "it was strictly an agreement, more or less," and "[i]t was . . . a ten year agreement with them." She denied negotiating the checks for the lump sum payments, but testified she cashed or deposited them and that she and Bobby used the money to develop a third row of RV spots. She admitted that she saw the plaintiffs building the camps on the property and did nothing to stop them. When asked specifically about the ten-year term and whether she understood the property was to be transferred upon its expiration, she responded, "If it was clear and free. If the property was clear."

13

In *Thomassee,* this court considered the validity of an oral sale of an interest in immovable property by the husband alone. The wife acknowledged that she knew of the transaction and that the husband gave her proceeds from the sale to upgrade her wedding ring. Noting the wife did not object to or contest the transaction, this court concluded the wife's acceptance of proceeds from the sale was sufficient to establish her tacit confirmation of the transaction so as to cure its relative nullity. *See Thomassee,* 2015WL5547483 at *4.

We find no material distinction between the facts presented in *Thomassee* and those presented herein. Juanita knew of the contracts. Though she may have privately voiced some disagreement to her husband, she admitted that she deferred to her husband's decision. She then participated in investing the plaintiffs' payments in the community business. Juanita's actions were sufficient to establish her tacit confirmation of the transactions so as to cure the relative nullities. *Cf. Thomassee,* 2015WL5547483 at *4. The trial court erred in finding the contracts to be invalid and unenforceable.

Upon an obligor's failure to perform an obligation to deliver a thing, or not to do an act, or to execute an instrument, the court shall grant specific performance plus damages for delay if the obligee so demands. If specific performance is impracticable, the court may allow damages to the obligee. La. Civ. Code art. 1986. Because the trial court found the contracts to be invalid and unenforceable, it did not reach the issues of damages and whether specific performance is impracticable. The record before us raises questions as to both issues; therefore, we remand this matter to the trial court to consider these issues in the first instance and render judgment.

**CONCLUSION**

The trial court's August 3, 2018 judgment that dismissed all claims is reversed. This matter is remanded to the trial court with instructions that it render

14

judgment consistent with this opinion. Costs of this appeal are assessed to the Succession of Bobby E. Bryan and Juanita Bryan.

**REVERSED AND REMANDED.**

15

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CA 0062

JOANN HARP AND GARY HARP

VERSUS

SUCCESSION OF BOBBY E. BRYAN AND JUANITA S. BRYAN

*Consolidated With*

2019 CA 0063

CARYL WADE AND TOMMY WADE

VERSUS

SUCCESSION OF BOBBY E. BRYAN AND JUANITA S. BRYAN

*Consolidated With*

2019 CA 0064

LINDA LEWIS AND HILLARY LEWIS

VERSUS

SUCCESSION OF BOBBY E. BRYAN AND JUANITA S. BRYAN



**GUIDRY, J. dissents with reasons.**

**GUIDRY, J. dissenting.**

The proper interpretation of a contract is a question of law subject to *de novo* review on appeal. Montz v. Theard, 01-0768, p. 5 (La. App. 1st Cir. 2/27/02), 818 So. 2d 181, 185. When considering legal issues, the reviewing court accords no special weight to the trial court but conducts a *de novo* review of questions of law and renders judgment on the record. Montz, 01-0768 at p. 5, 818 So. 2d at 185.

The agreements at issue, each entitled "Lease/Purchase of Immovable Property," list MarshMasters as lessor, contain a detailed description of the leased

1

property, provide for a lease term of ten years, and an agreement by each set of lessees to pay monthly rent in the amount $250.00 per month, payable in a lump sum to lessor in the amount of $35,000.00 for the Harps and Lewises and $30,000.00 for the Wades at the time of execution of the lease. Additionally, as consideration for the lump sum advance lease payment, lessor agrees and obligates itself to transfer a fee simple title in and to the described property, good and clear, to lessee within twenty days of the expiration of the ten year lease term. The agreements further provide that lessees shall be entitled to use water and sewer facilities on lessor's property at no charge, that lessees shall be responsible for all charges for electricity used on the leased premises during the term of the lease, and upon termination of the lease, lessees shall begin to pay to lessor $400.00 per year for general upkeep of the property and grounds servicing lessee's property. Each agreement was signed by Bobby Bryan, as authorized agent for lessor, MarshMasters.

The evidence admitted at the trial of this matter demonstrates that the three pieces of property at issue were purchased by Bobby and Juanita during their marriage and as such are community property. Furthermore, Juanita confirmed that while she and her husband named the RV park MarshMasters, the business was not incorporated, the property at issue was not transferred to MarshMasters, and the property at all times remained community property owned by Bobby and Juanita.

According to La. C.C. art. 2347, the concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovable property. When the concurrence of the spouses is required by law, the alienation, encumbrance, or lease of community property by a spouse is relatively null unless the other spouse has renounced the right to concur. La. C.C. art. 2353. Furthermore, a transfer of immovable property must be made by authentic act or act under private signature. La. C.C. art. 1839.

2

In the instant case, while there are several deficiencies with the written agreements, each agreement purports to transfer ownership of the subject, community properties to the Harps, Wades, and Lewises upon expiration of their ten-year lease terms. As such, the concurrence of both Bobby and Juanita was required to validly alienate and/or transfer the community immovable property. Furthermore, because the agreements purport to transfer ownership of immovable property, they must be authentic acts or acts under private signature. See La. C.C. art. 1839.

It is undisputed that Juanita did not sign any of the agreements as "lessor" and only signed the Lewis agreement as a witness. The agreements were not executed before a notary public and therefore, they are not authentic acts. Furthermore, while they could be considered acts under private signature, they are not signed by both spouses. As correctly noted by the majority, the failure of one of the spouses to concur in the alienation, encumbrance, or lease of a community immovable creates only a relative nullity, which generally may be cured through ratification and/or confirmation. See Thomassee v. Thomassee, 15-0127 (La. App. 1st Cir. 9/21/15), 2015WL5547483 *3 (unpublished opinion) (citing Zeller v. Webre, 09-45, p. 6 (La. App. 5th Cir. 5/26/09), 17 So. 3d 55, 58-59). In finding Juanita's failure to sign the agreements at issue created a relative nullity, the majority concluded, relying on Thomassee, that Juanita's actions were sufficient to establish her tacit confirmation of the transactions so as to cure the relative nullities. However, the majority's reliance on this court's previous decision in Thomassee is misplaced.

In Thomassee, this court found, citing Zeller, at p. 6, 17 So. 3d at 58-60, that a spouse, who never expressly concurred in her husband's sale of a one-half interest in a piece of community immovable property, tacitly confirmed the oral transaction by accepting funds that she knew came from the sales transaction to purchase a diamond ring. Thomassee, 2015WL5547483 at *4. However, Thomassee involved

3

an *oral* agreement to transfer immovable property, as contemplated by La. C.C. art. 1839, which provides that "[A]n oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath." Both spouses in <u>Thomassee</u> recognized the sale under oath, and this court found that the property had been delivered. <u>Thomassee</u>, 2015WL5547483 at *4 and 5. As such, a signature was not required in <u>Thomassee</u> to have a valid transfer of immovable property.

In the instant case, however, the agreements transferring immovable community property were *written* agreements, and as such, the law proscribes that such a transfer of an immovable must be by authentic act or by act under private signature. <u>See</u> La. C.C. art. 1839. Accordingly, while the agreements may be relatively null because one spouse failed to concur, they are also subject to the form requirements for transfers of immovable property. Because the agreements transferring community immovable property purport to be acts under private signature, the agreements required the signature of both spouses in order to be considered valid transfers of community immovable property. <u>See</u> <u>Solet v. Brooks</u>, 09-0568, p. 6 (La. App. 1st Cir. 12/16/09), 30 So. 3d 96, 100. Accordingly, Juanita's failure to sign the agreements at issue renders those agreements invalid.

# STATE OF LOUISIANA
## COURT OF APPEAL
## FIRST CIRCUIT

### 2019 CA 0062
### JOANN HARP AND GARY HARP
### VERSUS
### SUCCESSION OF BOBBY E. BRYAN AND JUANITA S. BRYAN
*consolidated with*
### 2019 CA 0063
### CARYL WADE AND TOMMY WADE
### VERSUS
### SUCCESSION OF BOBBY E. BRYAN AND JUANITA S. BRYAN
*consolidated with*
### 2019 CA 0064
### LINDA LEWIS AND HILLARY LEWIS
### VERSUS
### SUCCESSION OF BOBBY E. BRYAN AND JUANITA S. BRYAN

VGW
by

**WHIPPLE, C.J., concurring.**

Despite the imprecise language of the judgment stating that "all claims" were dismissed (which arguably could be read to encompass Juanita's reconventional and amended claims, even though judgment was rendered in her favor), I agree with the ultimate ruling by the majority herein on the merits. Accordingly, I concur in the result.